**Norma J. WARE, Plaintiff–Appellant,**

v.

**UNIFIED SCHOOL DISTRICT NO. 492, BUTLER COUNTY, STATE OF KANSAS; Board of Education, Unified School District No. 492, Butler County, State of Kansas, and Larry L. Geil, Superintendent of Schools, Defendants–Appellees.**

No. 86–1081.

United States Court of Appeals, Tenth Circuit.

May 7, 1990.

---

Philip A. Hamm of El Dorado, Kan., and Robert E. Hough, Jr. of Hough & Hough, P.A., Fort Smith, Ark., for plaintiff-appellant.

Mary Kathleen Babcock and Timothy B. Mustaine of Foulston, Siefkin, Wichita, Kan., for defendant-appellee, Unified School Dist. No. 492.

Daniel J. Sevart of Sevart & Sevart, Wichita, Kan., for defendant-appellee, Larry L. Geil.

Before McKAY, BARRETT, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

In *Ware v. Unified School Dist. No. 492,* 881 F.2d 906 (10th Cir.1989), we reversed a directed verdict in favor of the school board on Ware's claim that she was discharged in violation of her First Amendment rights. The school board filed a petition for rehearing alleging that under Kansas law the board rather than Superintendent Geil was the final decisionmaker with respect to Ware's employment, and that there was no delegation of authority. In addition, the board argues that, in assessing evidence relevant to its liability, we erred in applying the deliberate indifference standard of *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), to a claim other than the alleged failure to train at issue there.

After receiving the petition, we asked the parties to brief the impact of the Supreme Court's recent decision in *Jett v. Dallas Indep. School Dist.,* — U.S. —, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), on the question of the board's liability for the termination of Ware's employment. For the reasons set out below, we now hold in light of *Jett* that state law vests the board with final decisionmaking authority and that the board did not delegate this authority to Geil. However, we reaffirm our conclusion that the deliberate indifference standard is the appropriate one to use in this case to determine whether the requisite "direct causal link" exists between the alleged constitutional deprivation and the board's decision, as final policymaker, to fire Ware. *City of Canton,* 109 S.Ct. at 1203. We likewise do not disturb our conclusion that Ware succeeded in raising a jury issue under this standard. Our discussion in Part IV of the original panel decision on the board's liability is modified in accordance with this opinion. In all other respects the petition for rehearing is denied. No active member of the court having requested a poll of the court, the request for en banc consideration is also denied.

I.

The Court reiterated in *Jett* that a local governmental entity such as a school board may only be held liable for decisions made by officials who have authority under state law to speak as final decisionmakers on the particular issue. *See* 109 S.Ct. at 2723. The Court then said:

"[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury. Reviewing the relevant legal materials, including state and local positive law, as well as ' "custom or usage" having the force of law,' ... the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue."

*Id.* (citations omitted) (emphasis in original). Thus, a governmental body will only be held liable for the results of decisions made by the final policymaker, as defined by state law. However, final decisionmaking authority may be delegated. *See id.* at 2724; *see also City of·St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion). On the other hand,

"[s]imply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate offi-

cial manifested a 'custom or usage' of which the supervisor must have been aware.... In both those cases, the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower-ranking official. But the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other *unstated* rationale."

*Praprotnik*, 485 U.S. at 130, 108 S.Ct. at 927 (emphasis added). In the present case, the school board argues that it was the final policymaking authority, that it did not delegate its authority to Geil, and that it should not be held liable for approving Geil's decision because it had no notice of the wrongful motive underlying that decision.

■ We agree with the board that it is the final decisionmaking authority under state law. Ware served as clerk to the board and as secretary to the superintendent of the school district. The relevant Kansas statutes provide that "[t]he board of education of each school district shall appoint a clerk, who shall serve at the pleasure of the board," Kan.Stat.Ann. § 72–8202c (1985), and that "the board of education of any school district may appoint other officers and employees to serve at the pleasure of the board, *id.* § 72–8202e. We have found no authority in Kansas law under which a school board has the power to delegate its statutory prerogative to appoint employees to serve at its pleasure. To the contrary, the Kansas Supreme Court has stated that "[school districts and other subdivisions of the state have only such powers as are conferred upon them by statute, specifically or by clear implication, and any reasonable doubt as to the existence of such power should be resolved against its existence." *Hobart v. Board of Educ. of Unified School Dist. No. 309*, 230 Kan. 375, 634 P.2d 1088, 1094 (1981) (quoting *State ex rel. McAnarney v. Rural High School Dist. No. 7*, 171 Kan. 437, 233 P.2d 727, 730 (1961)).

■ The Supreme Court has recognized, however, that lawfully empowered decisionmakers cannot insulate themselves from liability under section 1983 by *knowingly* allowing a subordinate to exercise final policymaking authority vested by law in the decisionmakers. *See Praprotnik*, 485 U.S. at 126–27, 108 S.Ct. at 925–26. Accordingly, the Court has articulated circumstances in which a governmental entity will be held liable for the decisions of a subordinate due to a delegation of final decisionmaking power. As we noted above, in *Praprotnik* the plurality discussed the circumstances in which a final policymaker will be considered to have delegated its policymaking authority to another official. Such delegation arises when a subordinate's decision is couched as a policy statement expressly approved by the policymaking entity, or when the decision manifests a custom or usage of which the entity must have been aware. *Praprotnik*, 485 U.S. at 130, 108 S.Ct. at 927. Delegation does not occur when a subordinate's decisions are constrained by policies not of his making or when those decisions are subject to review by the authorized policymaker.

■ In this case, Geil's decision to terminate Ware's employment clearly was not cast in the term of a policy statement, nor is there any other indication that Geil's decision represented a custom or usage with the force of law.[1] The board instead

---

1. We note evidence in the record that during the board's executive session on April 8, the board discussed the fact that it was Geil's privilege to nonrenew his secretary and get another one. Rec., supp. vol. I, at 132–33. Another board member testified that when Geil began his job as superintendent, "it was the understanding between him and the board that he could choose his immediate secretary." *Id.* at 213.

While this evidence could be construed to support an inference that the board delegated its final authority to Geil, we no longer consider it significant in view of the Supreme Court's admonition that the identification of final decisionmakers must be done as a matter of law upon review of "the relevant legal materials, including state and local positive law, as well as '"custom or usage" having the force of law.'"

retained and exercised its authority to review Geil's decision. This case is thus distinguishable from *Flanagan v. Munger*, 890 F.2d 1557 (10th Cir.1990). In *Flanagan*, the governmental entity conceded below that it had delegated final policymaking authority to a subordinate. Moreover, the relevant provisions of the municipal code gave direct authority to the subordinate, and no established procedure existed by which the subordinate's decisions were reviewed. *Id.* at 1568–69. Here, to the contrary, the board has not conceded the delegation of its authority, no provision of law arguably vested Geil with final authority, and his decision was subject to review by the board. Accordingly, we conclude that the board retained final decisionmaking authority with respect to the termination of Ware's employment.

 We thus turn to whether the board may be held liable under section 1983 for the alleged constitutional deprivation arising from its own decision to fire Ware. Because liability under section 1983 cannot rest upon the doctrine of *respondeat superior, see City of Canton*, 109 S.Ct. at 1203, a direct causal link must exist between the acts of the governing body sought to be held liable and the alleged constitutional deprivation, *id.* Of course, "[i]f the decision to adopt [a] particular course of action is properly made by [the] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Moreover, contrary to the board's argument on rehearing, we remain convinced that a causal connection between the unconstitutional act and the authorized decisionmakers may be established when the governing body has exercised its decisionmaking authority with deliberate indifference to the constitutional rights of those

affected by its decisions. *See City of Canton*, 109 S.Ct. at 1204–06; *Smith v. Rowe*, 761 F.2d 360, 368–69 (7th Cir.1985).

In applying the deliberate indifference standard to assess municipal liability for failure to train, the Supreme Court stated in *City of Canton* that this rule was most consistent with the Court's "admonition in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), and *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton*, 109 S.Ct. at 1204–05. The Court rejected the lesser standard of gross negligence, *id.* at 1204 & n. 7, stating that "[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983," *id.* at 1206. The board has provided no reason for limiting to its facts the Court's conclusion in *City of Canton* that the relatively high deliberate indifference standard supports the "causal link" requirement. Accordingly, we reiterate our holding that deliberate indifference is the proper standard by which to determine the board's liability.[2] *See, e.g. D.T. v. Independent School Dist. No. 16*, 894 F.2d 1176, 1192–93 (10th Cir.1990); *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 724–25 (3d Cir.1989).

 There is evidence in the record to support Ware's claim that the board acted with deliberate indifference to her First Amendment rights in approving her termination. School boards are chargeable with the knowledge that employees "may not be dismissed in retaliation for lawful exercise of first amendment freedoms." *Greminger v. Seaborne*, 584 F.2d 275, 279 n. 4 (8th Cir.1978). The record contains evidence that the board members knew about

*Jett v. Dallas Indep. School Dist.*, —— U.S. ——, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 n. 1, 108 S.Ct. 915, 924 n. 1).

**2.** It is important to distinguish between the standard for determining when a governmental enti-

ty will be liable under section 1983 for constitutional wrongs committed by its employees and the degree of fault, if any, which a plaintiff must show to make out an underlying claim of a constitutional violation. *See e.g., City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204 n. 8, 103 L.Ed.2d 412 (1989).

Ware's public stand on the bond issue and were informed of her belief that her termination was in retaliation for that stand. One member, Dale Remsburg, testified that he believed the bond issue was the cause and that another member told him he thought so as well. The board meeting itself was attended by an unusually large number of patrons and was apparently disorderly. Some evidence indicates that the bond issue and Ware's termination were raised from the floor. Significantly, Remsburg testified that at the executive session he raised the possibility that Geil's recommendation was tied to the bond issue and that Geil's proffered reasons were not valid. Rec., supp. vol. III, at 34. Moreover, the school board president testified that he was concerned prior to the board meeting about Ware's speech. He stated that "my main concern was that here you've got an employee of your District, and if they're out saying you don't need this here bond issue, that was my main concern, that it just wouldn't look as good." Rec., supp. vol. I, at 151. Notwithstanding the above indications that the board knew Geil's recommendation was in retaliation for Ware's position on the bond issue, the board made no independent investigation, asked Geil no questions about the reasons for his decision, and asked Ware only one question, the answer to which it did not take into consideration. This evidence is sufficient to create a jury question on whether the board acted with deliberate indifference to Ware's First Amendment rights in approving Geil's recommendation.

BARRETT, Senior Circuit Judge, dissenting:

Twice now the majority has assumed the role of ultimate fact finder.

On direct appeal from the district court's directed verdict in favor of the School District and its judgment n.o.v. in favor of Superintendent Geil, the majority of this court reversed. *See Ware v. Unified School Dist. No. 492*, 881 F.2d 906 (10th Cir.1989). The majority did so even though the district court faithfully complied with the rigid standards of the rule it was aware of governing those motions, i.e., that the court cannot reweigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury.

In my dissent in *Ware, supra,* I agreed with the district court that, on the record made, the jurors could not have reasonably inferred that Ware's First Amendment opposition to the bond issue was a substantial or motivating factor in either Geil's recommendation for Ware's termination or the Board's 4–3 vote in support of her termination. The trial court concluded, and I agreed, that the *overwhelming* weight of the evidence established that the School Board terminated Ware for legitimate reasons which had no relationship to the bond issue.

The majority "found," contrary to the district court, support for Ware's contention that the School Board had delegated its authority to terminate Ware "[b]y the undisputed fact that Geil changed the locks to Ware's office, thus locking her out, the day after he told her he was going to recommend her nonrenewal and five days *before* the school board meeting at which his recommendation was presented." On the School Board's petition for rehearing and based upon the Supreme Court opinion in *Jett v. Dallas Indep. School Dist.,* — U.S. —, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the majority now holds that the School Board did not delegate its final decision-making authority to Geil. Even so, the majority insists on re-affirming its holding-conclusion that the School District is nevertheless liable to Ware based upon flimsy evidence the majority has determined to be "sufficient" to show that the School Board "[a]cted with *deliberate indifference* to Ware's First Amendment rights in approving Geil's recommendation." (Emphasis supplied). The majority thus ignores the trial court's view of the undisputed evidence [1] and, instead, relies on flimsy, lightweight evidence to establish "deliberate indifference" on the part of the School Board.

---

1. "The undisputed evidence convincingly demonstrates that the bond issue played no part whatsoever in the Board's decision to terminate Ware. The bond issue was not raised at the board meeting and the board members testified that the issue was not considered by them.

This court has recently held that to establish "[d]eliberate indifference there must be evidence demonstrating a higher degree of fault than negligence, or even gross negligence, but less than that required to demonstrate an intentional and malicious intent." *See Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1495–96 (10th Cir.1990). This is consistent with the Supreme Court's opinion in *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) which rejected the gross negligence standard in assessing municipal liability under § 1983 in favor of the higher "deliberate indifference" standard. The Court there held that in order to establish deliberate indifference the facts in the case must prove a degree of culpable conduct greater than that required to establish gross negligence. There is simply no evidence in this record supporting the imposition of School District liability under the "deliberate indifference" standard. Thus, the issue should never have been presented to the jury.

I would affirm the district court.

Ware presented no testimony to the contrary." (R., Vol. I, Doc. 64, p. 11).