976 F.2d 623
 62 Fair Empl.Prac.Cas. (BNA) 1633,
60 Empl. Prac. Dec. P 41,816, 61 USLW 2209,
77 Ed. Law Rep. 1127
 Vernon R. JANTZ, Plaintiff-Appellee,
v.
Cleofas F. MUCI, Defendant-Appellant.
Lambda Legal Defense and Education Fund, Inc.; American
Civil Liberties Union Foundation and American Civil
Liberties Union of Kansas; National Conference of Gay and
Lesbian Elected Officials, Amici Curiae.
 No. 91-3245.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 9, 1992.
Rehearing Denied Dec. 14, 1992.
 
 David M. Rapp of Hinkle, Eberhart & Elkouri, Wichita, Kan., for defendant-appellant.
 James S. Phillips, Jr. of Phillips & Phillips, Wichita, Kan., for plaintiff-appellee.
 Stephen V. Bomse, Clyde J. Wadsworth of Heller, Ehrman, White & McAuliffe, San Francisco, Cal., and Mary Newcombe, Los Angeles, Cal., for amicus curiae Lambda Legal Defense and Educ. Fund, Inc.
 Eric E. Davis of Saperstein, Mayeda, Larkin & Goldstein, Los Angeles, Cal., for amicus curiae National Conference of Gay and Lesbian Elected Officials.
 William B. Rubenstein, Matt Coles, Ruth E. Harlow of American Civil Liberties Foundation, New York City, and David J. Waxse of Shook, Hardy & Bacon, Overland Park, Kan., for amicus curiae American Civil Liberties Union Foundation and the American Civil Liberties Union of Kansas.
 Before BALDOCK and BARRETT, Circuit Judges, and PARKER, District Judge.*
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiff-appellee Vernon R. Jantz brought this 42 U.S.C. § 1983 action against Defendant-appellant Cleofas F. Muci, the former principal of Wichita North High School (Wichita North), Unified School District No. 259 (District 259), in Wichita, Kansas. Plaintiff alleges that Defendant violated his Fourteenth Amendment equal protection rights under color of state law by denying him full-time employment as a social studies teacher/coach at Wichita North because of what Defendant perceived as Plaintiff's "homosexual tendencies." Plaintiff brought the action against Defendant in both Defendant's individual and official capacities. Defendant moved for summary judgment, claiming that Plaintiff had failed to place material facts in issue and that he was entitled to judgment as a matter of law. The district court refused to grant summary judgment, and Defendant appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, see Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 644 (10th Cir.1988), and we reverse. The case is remanded for entry of summary judgment in favor of Defendant.
 
 I.
 
 2
 Plaintiff has taught continuously since early 1987 in various District 259 schools, including some work as a substitute teacher at Wichita North. He has twice been rejected, however, for full-time District 259 high school teaching positions. This case arises from his attempt to obtain a full-time position at Wichita North for the 1988-89 school year. Because of the merger of District 259 Ninth Graders into high school that year, the District created a new social studies teacher/coach position. Plaintiff interviewed for the position but was rejected in favor of Matthew Silverthorne, a recent college graduate who had student taught and coached at Wichita North. Defendant, the Wichita North principal, recommended that the District hire Mr. Silverthorne. It is undisputed on appeal that Jane Ware, Director of Secondary Personnel in District 259, actually made the employment offer to Mr. Silverthorne, but the district court found that Plaintiff had established on summary judgment that Defendant's decision not to recommend Plaintiff was an exercise of de facto hiring authority.
 
 
 3
 Defendant argued below on summary judgment that he recommended Mr. Silverthorne because he was better qualified than Plaintiff. He also argued that he was qualifiedly immune from the claim brought against him in his personal capacity and that he did not have final policy decisionmaking authority so as to give rise to entity liability for the claim brought against him in his official capacity. Plaintiff countered with summary judgment evidence to support his allegation that Defendant's decision resulted from prejudice against homosexuals; this, even though the record shows that Plaintiff is married, has two children, and does not claim to be homosexual or bisexual. The summary judgment evidence came in the form of deposition testimony from Defendant's secretary, Sharon Fredin, and the director of social studies at Wichita North, William Jenkins. Ms. Fredin testified that she had remarked to Defendant sometime during the 1987-88 school year that Plaintiff reminded her of her former husband, whom she believed to be a homosexual. Mr. Jenkins testified that he knew and respected Plaintiff based on Plaintiff's substitute teaching experience and that he had recommended Plaintiff for the new position. He further testified that sometime during the fall of the 1988-89 school year he had inquired into why Plaintiff had not been hired and that Defendant had stated that it was because of Plaintiff's "homosexual tendencies." Defendant admitted in deposition testimony that he had conveyed Ms. Fredin's remark to Mr. Jenkins, but he denied that this was his reason for not recommending Plaintiff.
 
 
 4
 In denying Defendant's motion for summary judgment, the district court held that material issues of fact existed regarding whether Defendant had violated Plaintiff's Fourteenth Amendment equal protection rights by denying employment based on a perceived homosexual classification. The court broke new ground and held that, as of 1991, the date of the decision, homosexuals and those perceived as homosexuals are a suspect class deserving of heightened scrutiny in the equal protection context. 759 F.Supp. 1543, 1546-51. Nevertheless, the court recognized that this new suspect classification could not possibly have been clearly established in 1988 when Defendant allegedly discriminated against Plaintiff. Id. at 1552. Therefore, the court analyzed Plaintiff's qualified immunity defense under a rational basis test, holding that it was clearly established in 1988 that the government could not " 'discriminate [against homosexuals] for the sake of discrimination.' " Id. at 1552 (citing Swift v. United States, 649 F.Supp. 596 (D.D.C.1986)). Applying this precept as clearly established by one fellow district court,[1] the court held that Defendant was not entitled to the qualified immunity defense because he did not offer a rational explanation for basing his hiring decision on a perception of "homosexual tendencies." Id. at 1553. Furthermore, the court rejected Defendant's argument with regard to the claim against him in his official capacity, noting only that Plaintiff had demonstrated on summary judgment that Defendant's failure to recommend Plaintiff for employment was consistent with an established District 259 policy of allowing school principals unchecked hiring authority and that Defendant had not adduced summary judgment evidence of the participation of any other official in the decision to reject Plaintiff. Id. at 1553 (citing Jett v. Dallas Independent School District, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).
 
 
 5
 This appeal centers on the district court's treatment of the qualified immunity issue and Defendant's argument that he did not have final policy decisionmaking authority. We address each issue in turn.
 
 II.
 
 6
 Qualified immunity shields government officials from the burdens of lawsuits stemming from the exercise of discretionary authority, yet it also allows for the vindication of constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Hannula v. City of Lakewood, 907 F.2d 129, 130-31 (10th Cir.1990). In striking a balance between these two competing goals, the Supreme Court has formulated a test based on the "objective reasonableness" of the conduct at issue as compared with the state of the law at the time of the alleged violation. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738; Snell v. Tunnell, 920 F.2d 673, 696 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). Under this test, the burdens of a trial and personal liability may not be imposed on a government official for the exercise of discretionary authority unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. This "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).
 
 
 7
 Qualified immunity differs from other affirmative defenses in that it protects the defendant from "the burdens associated with trial" as well as from personal liability. Pueblo Neighborhood Health Centers, 847 F.2d at 645; Hannula, 907 F.2d at 131. Therefore, our review of the district court's summary judgment determination differs from the norm. Hannula, 907 F.2d at 130. A defendant government official need only raise the qualified immunity defense to shift the summary judgment burden to the plaintiff. Id. This burden is quite heavy, id. at 131, for the plaintiff must do more than simply allege the violation of a general legal precept. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987). The plaintiff must "instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." Hannula, 907 F.2d at 131. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. Clearly this standard does not require a precise factual analogy to pre-existing law; however, the plaintiff must demonstrate that the unlawfulness of the conduct was "apparent" in the light of pre-existing law. Id. Once the plaintiff meets his burden of coming forward with facts or allegations which demonstrate that the defendant's alleged violation should have been apparent in light of pre-existing law, the "defendant assume[s] the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity." Powell v. Mikulecky, 891 F.2d 1454, 1457 (10th Cir.1989).
 
 
 8
 Applying the qualified immunity analysis to this case, we must determine whether Plaintiff has met his burden of demonstrating that Defendant's alleged conduct violated clearly established law of which a reasonable person would have been aware in 1988. Plaintiff contends that clearly established Fourteenth Amendment equal protection principles prohibited state and local officials from arbitrarily discriminating against homosexuals when Defendant refused to recommend him for the new social studies teacher/coach position at Wichita North in 1988. The district court agreed with this assertion, relying solely on United States v. Swift, 649 F.Supp. 596 (D.D.C.1986). 759 F.Supp. at 1553. In Swift, the District Court for the District of Columbia held that "the government may not discriminate against homosexuals for the sake of discrimination, or for no reason at all." 649 F.Supp. at 602. By way of analogy, the district court in this case held that the government may not arbitrarily discriminate against "perceived homosexuals" either. 759 F.Supp. at 1553.
 
 
 9
 On appeal, Plaintiff goes beyond Swift, relying primarily on a general discussion of equal protection principles. For qualified immunity purposes only, he concedes, as the district court recognized, that government classifications based on sexual orientation were neither inherently suspect nor quasi-suspect as a matter of clearly established law in 1988. He concedes the same with regard to fundamental rights. Therefore, he does not discuss the higher levels of scrutiny applied to government actions which disparately affect such classes and rights.
 
 
 10
 Nevertheless, Plaintiff argues that Defendant's actions could not withstand the clearly established rational basis review applied to government classifications which do not call for higher levels of scrutiny. He cites United States Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), in which the Supreme Court held that a provision of the Food Stamp Act which was designed to prevent hippies from participating in the Food Stamp Program could not withstand traditional rational basis review under a Fifth Amendment equal protection analysis. Id. at 533-34, 93 S.Ct. at 2825-26. The Moreno Court noted that "[f]or the constitutional conception of 'equal protection of the laws' to mean anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." Id. at 534, 93 S.Ct. at 2826. Plaintiff also cites Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 446-47, 105 S.Ct. 3249, 3257-58, 87 L.Ed.2d 313 (1985), in which the Court applied the same principle under a Fourteenth Amendment equal protection analysis of a classification which disparately affected retarded citizens. We take it as given that the Moreno and Cleburne references to Congressional desire to harm an unpopular group apply also to a school administrator's decision to deny employment to an applicant. See Schware v. Board of Bar Examiners, 353 U.S. 232, 238-39, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) (State cannot exclude person from occupation in contravention of Fourteenth Amendment Equal Protection clause). See also Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1072-73, 30 L.Ed. 220 (1886) (Equal Protection clause applies to discriminatory administration of facially neutral statute). Accordingly, Plaintiff contends that Defendant's bare desire to harm homosexuals by denying him the full-time position at Wichita North violated equal protection principles clearly established in Moreno and Cleburne.
 
 
 11
 Plaintiff stresses that Defendant did not offer a rationale in district court for denying him the full-time position based on a perceived homosexual status. Therefore, Plaintiff argues, the decision was per se invidious discrimination against homosexuals in violation of the general principles established in Moreno and Cleburne.[2] Plaintiff misapplies the qualified immunity standard, however. It was not Defendant's burden to demonstrate that his alleged conduct did not violate clearly established law. Rather it was Plaintiff's burden "to demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." Hannula, 907 F.2d at 131. Rather than a survey of the generalized rational basis test as applied in Moreno and Cleburne, we think the "substantial correspondence" test at a minimum requires an examination of how courts have treated classifications affecting homosexuals, for the unlawfulness of the alleged activity must be "apparent" in light of pre-existing law before Defendant can be forced to endure the burdens associated with trial.
 
 
 12
 Examining the case law as it existed in 1988, we do not find a clearly established line of authority proscribing an adverse action against civilian job applicants based on homosexual or perceived homosexual orientation. In 1985, Justice Brennan aptly described the state of the law in this area: "[w]hether constitutional rights are infringed in sexual preference cases, and whether some compelling state interest can be advanced to permit their infringement, are important questions that this Court has never addressed, and which have left lower courts in some disarray." Rowland v. Mad River Local School District, 470 U.S. 1009, 1015-16, 105 S.Ct. 1373, 1378, 84 L.Ed.2d 392 (1985) (Brennan, J., dissenting from the denial of certiorari). The appeals court in Rowland reversed a jury verdict in favor of a bisexual high school guidance counselor who had been discharged from employment because she had expressed her sexual orientation. Regarding her equal protection claim, the appeals court reversed on plain error grounds because she had failed to present "evidence of how other employees with different sexual preferences were treated." 730 F.2d 444, 450 (6th Cir.1984). Justice Brennan viewed this holding as a transparent effort to evade the central question in the case: "may a State dismiss a public employee based on her sexual status alone?" 470 U.S. at 1011, 105 S.Ct. at 1375. Justice Brennan further noted that the court of appeals had answered this question in the affirmative by reversing the jury's verdict. Id. at 1017-18, 105 S.Ct. at 1379.
 
 
 13
 Soon after Justice Brennan's dissent from the denial of certiorari in Rowland, the Court held in Bowers v. Hardwick, 478 U.S. 186, 194, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986) that homosexual sodomy was not a fundamental right under a Fourteenth Amendment substantive due process analysis. Plaintiff argues that Hardwick is inapposite because it dealt with a substantive due process analysis whereas his claim is based on the equal protection clause. For purposes of qualified immunity, however, we need not decide how Hardwick affects equal protection claims; we need only note that courts have reached differing conclusions on the issue. See, e.g., Ben-Shalom v. Marsh, 881 F.2d 454, 464 (7th Cir.1989) ("If homosexual conduct may constitutionally be criminalized, then homosexuals do not constitute a suspect or quasi-suspect class entitled to greater than rational basis scrutiny for equal protection purposes."), cert. denied, 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990); Woodward v. United States, 871 F.2d 1068, 1076 (Fed.Cir.1989) ("After Hardwick it cannot logically be asserted that discrimination against homosexuals is constitutionally infirm."), cert. denied, 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990); Padula v. Webster, 822 F.2d 97, 103 (D.C.Cir.1987) ("There can hardly be more palpable discrimination against a class than making the conduct that defines the class criminal."). But see Pruitt v. Cheney, 963 F.2d 1160, 1166 n. 5 (9th Cir.1992) (reviewing status-based discrimination against homosexuals under an active rational basis review, distinguishing Hardwick as conduct based discrimination); High Tech Gays v. Defense Indust. Security Clearance Office, 895 F.2d 563, 573 (9th Cir.1990) (same).
 
 
 14
 Plaintiff argues that, even though the cases interpreting Hardwick have reached differing results on the level of scrutiny applied to classifications based on homosexual conduct or status, each court applied at least the minimal rational basis test of Moreno and Cleburne. We agree, and prior to Hardwick we twice applied rational basis review to classifications which disparately affected homosexuals. See Rich v. Secretary of the Army, 735 F.2d 1220, 1229 (10th Cir.1984); National Gay Task Force v. Board of Educ., 729 F.2d 1270, 1273 (10th Cir.1984), aff'd by an equally divided court, 470 U.S. 903, 105 S.Ct. 1858, 84 L.Ed.2d 776 (1985).[3] The Supreme Court, however, held in Hardwick that the community's notions of morality were sufficient to provide a rational basis for the statute. Id. 478 U.S. at 196, 106 S.Ct. at 2846. See also Barnes v. Glenn Theatre, Inc., --- U.S. ----, ----, 111 S.Ct. 2456, 2468, 115 L.Ed.2d 504 (1991) (Scalia, J., concurring) ("In Bowers, we held that since homosexual behavior is not a fundamental right, a Georgia law prohibiting private homosexual intercourse needed only a rational basis in order to comply with the Due Process Clause. Moral opposition to homosexuality, we said, provided that rational basis."). Although the Hardwick Court did not deal with an equal protection claim, for qualified immunity purposes we think its holding, and the general state of confusion in the law at the time, cast enough shadow on the area so that any unlawfulness in Defendant's actions was not "apparent" in 1988. And we do not find Swift, 649 F.Supp. 596, which formed the basis of the district court's holding in this case, to clarify the law. Therefore, we hold that Defendant is entitled to qualified immunity.
 
 III.
 
 15
 At issue next is whether Defendant may be held liable--i.e. whether District 259 may be held liable--for damages resulting from the suit brought against him in his official capacity.[4] Section 1983 liability for the single act of an employee may not be imposed on a local government entity under a respondeat superior theory. Monell v. City of New York Dep't of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Rather, such liability may be imposed only if the employee possesses "final authority" under state law to establish policy with respect to the challenged action. See Jett v. Dallas Indep. School Dist., 491 U.S. 701, 736-38, 109 S.Ct. 2702, 2722-23, 105 L.Ed.2d 598 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84, 106 S.Ct. 1292, 1299-300, 89 L.Ed.2d 452 (1986); Ware v. Unified School District No. 492, 902 F.2d 815, 817 (10th Cir.1990). Whether Defendant possessed such "final authority" is a question of state law. Ware, 902 F.2d at 817. We review the denial of summary judgment on this issue under the same standard as the district court. Osgood v. State Farm Mut. Auto Ins., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 16
 This issue is controlled by our decision in Ware. In Ware we interpreted Kansas law and held that final hiring authority in the Kansas school system rests in the school boards. 902 F.2d at 818 (citing Kan.Stat.Ann. § 72-8202c (1985)). Furthermore, we held that the school boards had no statutory authority to delegate hiring authority to subordinates. Id. (citing Hobart v. Board of Educ. of Unified School Dist. No. 309, 230 Kan. 375, 634 P.2d 1088, 1094 (1981)). Therefore, in this case it is beyond dispute that Defendant, as principal of Wichita North, did not have "final authority" under Kansas law to hire teachers. In Ware, however, we noted "that lawfully empowered decisionmakers cannot insulate themselves from liability under section 1983 by knowingly allowing a subordinate to exercise final policymaking authority vested by law in the decisionmakers." Id. (citing Praprotnik, 485 U.S. at 126-27, 108 S.Ct. at 926.) (emphasis in original). This type of delegation "arises when a subordinate's decision is couched as a policy statement expressly approved by the policymaking entity, or when the decision manifests a custom or usage of which the entity must have been aware." Id. (citing Praprotnik, 485 U.S. at 130, 108 S.Ct. at 927-28). Plaintiff does not contend that Defendant's decision was couched in terms of a policy statement. Rather, he contends that District 259 delegated hiring authority to Defendant by "custom or usage," noting that the district court found that Defendant and other principals had virtual de facto hiring authority. The district court anchored its summary judgment determination on this finding, although it did not discuss Kansas law. 759 F.Supp. at 1553.
 
 
 17
 The district court noted that "[u]ltimate hiring decisions rarely conflict with the decision of the school principal[s] [in District 259]." Id. "Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." Praprotnik, 485 U.S. at 130, 108 S.Ct. at 927-28. Delegation must be absolute to give rise to the "final authority." If the board retains the authority to review, even though it may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur. See id. See also Williams v. Butler, 863 F.2d 1398, 1402 (8th Cir.1988) ("A clear message from Praprotnik is that an incomplete delegation of authority--i.e., the right of review is retained--will not result in municipal liability, whereas an absolute delegation of authority may result in liability on the part of the municipality."), cert. denied, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989); Worsham v. City of Pasadena, 881 F.2d 1336, 1341 (5th Cir.1989) (citing Williams v. Butler ). The uncontroverted record on summary judgment in this case demonstrates that the Board retained the right to review hiring decisions made by District 259 principals, including Defendant. See 759 F.Supp. at 1553 ("The principal's discretion in hiring is not unfettered."). Therefore, we do not find a delegation of policymaking authority. Summary judgment should have issued in favor of Defendant on the official capacity claim.
 
 
 18
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 Although the district court cited only to Swift, we note that there are earlier opinions from the 1960's by the D.C. Circuit which are consistent with Swift. See Norton v. Macy, 417 F.2d 1161 (D.C.Cir.1969) (mere homosexual conduct not grounds for dismissal from federal employment; instead the government must show a relationship between homosexuality and a negative effect on the efficiency of the government's service); Scott v. Macy, 349 F.2d 182 (D.C.Cir.1965) (government's refusal to hire plaintiff on grounds that he was homosexual was insufficient basis in absence of specific evidence of misconduct and the relationship of misconduct or immorality to occupation competence or fitness)
 
 
 [2]
 The district court agreed, although it relied only on Swift:
 The present case provides no indication of any justification for the defendant's determination to discriminate on the basis of sexual orientation, nor, as the court has noted earlier, has the defendant attempted to supply one.... Accepting as true the evidence offered by the plaintiff, as the court must under the relevant standards of review, the defendant acted arbitrarily, without any rational purpose, based upon personal prejudices against homosexuals.
 
 
 [759]
 F.Supp. at 1553 (citing Swift, 649 F.Supp. at 602)
 
 
 [3]
 Given our disposition of this case on immunity grounds, we need not address the district court's holding that classifications based on homosexual status as opposed to homosexual conduct are inherently suspect. 759 F.Supp. at 1546-51. We note, however, that the court failed to cite Rich, in which we held that a status-based classification was not inherently suspect. Were we to have the issue before us, we would not be entitled as a three-judge panel to overrule circuit precedent. United States v. Spedalieri, 910 F.2d 707, 710 n. 3 (10th Cir.1990)
 
 
 [4]
 Plaintiff's official capacity action against Defendant is in reality an action against District 259, and District 259 has had notice and an opportunity to respond. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). District 259 may not plead qualified immunity. See Owen v. City of Independence, 445 U.S. 622, 657, 100 S.Ct. 1398, 1418-19, 63 L.Ed.2d 673 (1979)