33 F.3d 62
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Gerald Dennis HARRIS, Jr.; Bill Bernard Collett,
Plaintiffs-Appellants,
v.
Barton WILLIAMS, individually; Dayle James, in his capacity
as Sheriff of Okmulgee County; Jim Hart,
individually, Defendants-Appellees.
 No. 93-7109.
 United States Court of Appeals, Tenth Circuit.
 Aug. 18, 1994.
 
 Before MOORE and KELLY, Circuit Judges, and BABCOCK,** District Judge.
 ORDER AND JUDGMENT[1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P.34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 Plaintiffs Gerald Dennis Harris and Bill Collett appeal from an order granting defendants summary judgment. We affirm.
 In October and November, 1991, plaintiffs were pretrial detainees held in custody in the Okmulgee County jail. Defendant Hart was the sheriff of Okmulgee County until November 13, 1991. Defendant Williams was the acting sheriff from November 13 to December 16, 1991, and prior to that time was undersheriff. Defendant James became sheriff on December 16, 1991.
 Richard Walker, a convicted sex offender being detained on a charge of forcible sodomy of a male, was placed in the same cell as plaintiffs by an unidentified jailer. Walker originally had been placed in segregation when he was booked, based on his record of repeated sexual assaults. Collett informed jail personnel that Walker sexually assaulted him on November 18, 1991. Thereafter, Harris stated that he, too, had been sexually assaulted by Walker in October and November. Williams immediately placed Walker in segregation. Walker was convicted of assaulting Collett.
 Plaintiffs sued under 42 U.S.C.1983. Defendants moved for summary judgment. Collett did not contest Hart's motion because Hart had resigned as sheriff before Collett was booked. The district court granted the remaining motions.
 Summary judgment is appropriate "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be entered against a party who will bear the burden of proof at trial on an element essential to his case if, upon motion, he fails to make a showing sufficient to establish the existence of that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review de novo. Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir.1992).
 To establish liability under 1983, a plaintiff must prove that the defendant, acting under color of state law, has deprived him of a right secured by the Constitution and laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Plaintiffs argue that defendants deprived them of their constitutional right under the Fourteenth Amendment to be secure in their person and free from assault, see Redman v. County of San Diego, 942 F.2d 1435, 1439 (9th Cir.1991), cert. denied, 112 S.Ct. 972 (1992), by improperly desegregating Walker into the general jail population pursuant to official policy, and by failing to train jailers to make a proper desegregation decision.
 Defendant James was sued in his official capacity only.
 Thus, the action against him actually is one against the
 governmental entity of which he is an agent--the sheriff's
 department. See Monell v. New York City Dep't of Soc.
 Servs., 436 U.S. 658, 690 n. 55 (1978). Local governmental
 entities are subject to 1983 liability only if it is shown
 that action taken pursuant to official municipal policy
 caused a constitutional tort. Id. at 691. There must be "a
 direct causal link between a municipal policy or custom and
 the alleged constitutional deprivation." City of Canton v.
 Harris, 489 U.S. 378, 385 (1989).
 Plaintiffs argue the decision of the unidentified jailer to desegregate Walker constituted official policy because the jailer was an official decisionmaker for the sheriff's department. "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). However, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id. at 481. That an official has discretion to exercise certain functions does not give rise to liability; rather, the official must be "responsible for establishing final government policy respecting such activity before the municipality can be held liable." Id. at 481-83. Such authority can be granted by legislative enactment or delegated by an official who possesses authority. Id. at 483. Merely going along with the discretionary decisions made by one's subordinates does not constitute delegation of authority to make policy, however. City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988). The authorized policymaker must ratify a subordinate's decision to charge that decision to the municipality. Id. at 127.[2] If the policymaker retains authority to review a subordinate's decision, even though he may not exercise it, no delegation of final authority exists. Jantz v. Muci, 976 F.2d 623, 631 (10th Cir.1992), cert. denied, 113 S.Ct. 2445 (1993). There is no evidence the sheriff, who is in charge of the jail and prisoners therein, Okla. Stat. tit. 19, 513; tit. 57, 47, or anyone to whom he had delegated authority, ratified the unidentified jailer's decision to desegregate Walker. Williams testified he did not know about the decision until after the assaults were reported; Hart had no recollection of Walker being released. Further, the sheriff had the authority to review any decisions regarding segregation of inmates. The decision to release Walker into the general population therefore was not official policy subjecting the sheriff's department to 1983 liability.
 Plaintiffs then claim that defendant Williams made the decision to release Walker. This argument is premised on former jailer Ronald Stange's testimony that he was told by an unnamed jailer that defendant Williams released Walker.[3] Such evidence would be inadmissible hearsay at trial and therefore cannot be considered in ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir.), cert. denied, 474 U.S. 823 (1985).
 Plaintiffs identify the sheriff's department's policy or custom of giving "untrained jailers the discretion of desegregating dangerous inmates based only upon their 'common sense,' " Appellants' Br. at 14, as the moving force behind their assaults. The undisputed evidence established there were two written policies regarding the segregation of prisoners. The Minimum Inspection Standards for Oklahoma Jails provided that prisoners who, because of their criminal record or the nature of charges pending against them, are determined to be a threat to the safety of other inmates, shall be housed separately from other inmates. Sheriff Hart's memo on segregation of inmates required consideration of the crime with which the prisoner was charged when assigning inmates to cells.
 There was no written policy on releasing prisoners from segregation. However, the jailers had discretion to desegregate prisoners who had not exhibited any behavioral problems in jail and about whom no other inmates had any complaints. No evidence was presented that any other inmate who was dangerous due to his criminal record or the nature of charges pending against him had been improperly desegregated. Walker's improper desegregation, alone, cannot establish that the sheriff's department had a policy or custom of desegregating dangerous prisoners. See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24, 831 (1985)(plurality and Brennan, J., concurring in part and concurring in the judgment).
 
 
 1
 Further, no admissible evidence was submitted identifying the individual who released Walker into the general jail population. Thus, plaintiffs made no showing that Walker was released pursuant to a policy or custom, rather than simply due to a mistake.
 
 
 2
 Plaintiffs contend the sheriff's department's failure to train its jailers in making desegregation decisions caused their injuries. A failure to train may form the basis for 1983 liability. Harris, 489 U.S. at 387. Essential to the claim is a showing that the training was inadequate. Id. at 390.
 
 
 3
 The undisputed evidence established that jailers did not need any prior training or experience to be hired. However, they were required to be certified within a year of hire. This necessitated forty hours of training. In addition, jailers were required to return for yearly refresher courses. Plaintiffs presented no evidence that the certification or refresher courses failed to address segregation of dangerous prisoners. Thus, their inadequate training claim fails.
 
 
 4
 Plaintiffs also claim the sheriff's department's policy or custom of desegregating dangerous inmates was deliberately indifferent to their constitutional rights. As discussed above, there is no evidence the sheriff's department had such a policy or custom. Thus, this case is distinguishable from Redman, 942 F.2d at 1444-45, where the county defendant had a policy or custom of placing aggressive homosexuals in the same cells as heterosexual prisoners in the general prison population.
 
 
 5
 Plaintiffs contend that defendants Williams and Hart, who
 
 
 6
 were sued in their individual capacities only, are directly
 
 
 7
 liable for their failure to supervise the jailer who
 
 
 8
 desegregated Walker. For supervisory liability to arise
 
 
 9
 under 1983, the supervisor must have personally directed, or
 
 
 10
 had actual knowledge of and acquiesced in, the
 
 
 11
 constitutional violation. Woodward v. City of Worland, 977
 
 
 12
 F.2d 1392, 1400 (10th Cir.1992), cert. denied, 113 S.Ct.
 
 
 13
 3038 (1993). Woodward specifically rejected plaintiffs'
 
 
 14
 argument that it is sufficient merely to show the supervisor
 
 
 15
 should have known of the violation. Id. at 1399.
 
 
 16
 Plaintiffs presented no admissible evidence that Williams or Hart personally directed, or had actual knowledge of and acquiesced in, Walker's release. That they should have known of the release is insufficient under 1983.
 
 
 17
 The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.
 
 
 
 **
 Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Alternatively, municipal liability may be based on the existence of a widespread practice of which the policymakers must have been aware. Id. at 127. However, to the extent plaintiffs claim the specific decision to desegregate Walker was itself a policy decision, this principle is inapplicable
 
 
 [3]
 Williams denies releasing Walker