**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JUANETTA LAWRENCE,

      Plaintiff-Appellant,

v.

SCHOOL DISTRICT NO. 1, IN THE
CITY AND COUNTY OF DENVER,
a/k/a Denver Public Schools; BOARD
OF EDUCATION OF SCHOOL
DISTRICT NO. 1, IN THE CITY
AND COUNTY OF DENVER, a/k/a
Denver Board of Education,

      Defendants-Appellees.

No. 13-1157
(D.C. No. 1:11-CV-02789-PAB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **MATHESON**, and **BACHARACH**, Circuit Judges.

---

Juanetta Lawrence used to work as a social worker in the Denver public

school system. Each summer she'd receive her assignment for the coming school

year, but in the summer of 2009 she received an assignment she didn't want. And

the assignment she *did* want went to a younger white woman whom Ms.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Lawrence, an African-American, thought less qualified. Ms. Lawrence proceeded to file a complaint with the Equal Employment Opportunity Commission, alleging racial discrimination. But before that claim could be resolved she found herself without any job at all.

The school district and board suspended and ultimately fired Ms. Lawrence because, they said, of unsatisfactory job performance. To support their claim they produced a number of negative reviews they had received about Ms. Lawrence's workplace conduct from a number of different schools, as well as an independent arbitrator's judgment. Convinced that all this was really retaliation for her decision to file the EEOC complaint, Ms. Lawrence filed this lawsuit against the Denver public school district and its school board. Besides various retaliation claims under 42 U.S.C. § 1981, she brought other federal and state charges. But at oral argument Ms. Lawrence made clear that the only question she wishes us to decide is whether the district court erred in granting summary judgment to the school district and board on her retaliation claims.

To survive summary judgment, Ms. Lawrence must begin by stating a prima facie case, showing that (1) she engaged in protected activity, (2) the school district or board took action that a reasonable employee would have found materially adverse, and (3) there was a causal connection between her protected activity and that adverse action. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). At summary judgment the district court found that

all of Ms. Lawrence's retaliation theories in this case fail one or more of these prima facie requirements. After an independent review of the record and law, we find ourselves constrained to reach the same conclusion.

*

In her first retaliation claim Ms. Lawrence presses the argument that the school district and board retaliated against her by giving her "significantly different responsibilities for the 2009-2010 school year" and also by setting her up "for failure" that year by forcing her to split her time at four different locations. But whether or not these allegations successfully navigate the first two requirements for a prima facie case, they clearly run aground on the third — the requirement that the employee's protected activity *cause* the materially adverse action taken by the employer. Ms. Lawrence's complaint makes clear she received her 2009-2010 assignment *before* she filed her EEOC complaint. Indeed, it was that very assignment and her displeasure with it that prompted Ms. Lawrence's EEOC complaint in the first place. According to Ms. Lawrence herself, then, it was the unfavorable work assignment that *caused* her protected activity, not the other way around. When confronted with this problem by defendants, moreover, Ms. Lawrence has attempted no answer. For that reason, we cannot see how the district court erred in granting the school district and board summary judgment on this particular retaliation theory.

\*

Next, Ms. Lawrence claims unlawful retaliation because she was suspended from her job — first with pay and later without — while her performance was under review before her dismissal. The school district and board claim that this suspension doesn't qualify as a materially adverse action and so Ms. Lawrence cannot satisfy the second requirement for a prima facie case. *Cf. Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action."). For her part, Ms. Lawrence insists that her suspension was a materially adverse action, in part because it qualified under her union's collective bargaining agreement as "corrective action." *Cf. id.* at 95 (Jacobs, J., concurring) ("Relief from job duties in anticipation of dismissal (with or without pay) would seem to be an adverse development; and a substantial reduction in duties and responsibilities can in itself be painful and humiliating for a productive person.").

We don't have to resolve this disagreement because Ms. Lawrence confronts another obstacle still. As Ms. Lawrence acknowledged at oral argument, neither the school district nor the school board played any causal role in her suspensions. Each time, she admits, the decision to suspend her was made instead and entirely by her supervisor, Eldridge Greer, whom the school district employed to manage its social workers. It was Dr. Greer, Ms. Lawrence

- 4 -

contends, who wanted revenge for her EEOC complaint. Yet Ms. Lawrence's retaliation claims based on her suspensions don't name Dr. Greer as a defendant. So even if we assume for argument's sake that Dr. Greer acted with retaliatory animus as Ms. Lawrence urges us to do, he just simply isn't in the case. Only the school district and board employing him are, and they aren't alleged to have been involved in the action Ms. Lawrence contends was materially adverse to her.

Neither can the school district and board be held liable simply because they employ Dr. Greer. In *Monell v. Department of Social Services*, the Supreme Court expressly held that municipal defendants — public school districts and school boards included — can't be held liable under 42 U.S.C. § 1983 solely because they employ a person who violated the plaintiff's constitutional rights. 436 U.S. 658, 691 (1978); *see also Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (applying the *Monell* rule to a school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir. 1990) (applying the *Monell* rule to a school board). In this way, § 1983 "rejects the tort principle of *respondeat superior* and does not subject municipalities to vicarious liability for the acts of their employees." *Milligan-Hitt v. Bd. of Trs.*, 523 F.3d 1219, 1223 (10th Cir. 2008). Instead, a municipality and its "taxpayers are liable only for the municipality's own misdeeds." *Id.* The same holds true when the plaintiff seeks prospective relief rather than damages for past misconduct. *L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 452-54 (2010). And these principles apply to § 1981

claims no less than § 1983 claims, because Congress designed § 1983 to supply the remedies when state actors violate the civil rights protected by § 1981. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 734 (1989); *Bolden v. City of Topeka*, 441 F.3d 1129, 1135 (10th Cir. 2006). So to hold the school district or school board liable for her suspensions, Ms. Lawrence must do more than show Dr. Greer was acting within the scope of his employment by the school district.

Ms. Lawrence might seek to satisfy *Monell* by showing that Dr. Greer's actions reflected an official school district policy or custom of retaliating against those who attempt to protect federally protected civil rights. Or that his actions were ratified by the school board. Or even that Dr. Greer himself is a final policymaker for the school district. *See Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284-85 (10th Cir. 2007).

The difficulty is Ms. Lawrence has not shown — and it seems cannot show — any of these signs of municipal misdeed. Far from suggesting that Dr. Greer was implementing the school district's official policies, Ms. Lawrence contends he flouted those policies when he suspended her — because he didn't first afford her a hearing and a chance to contest the criticisms of her job performance. Neither does the record in this case give any indication that the school board ratified or took any action at all with respect to Dr. Greer's decision to suspend, or that Dr. Greer was a final policymaker for the school district. Indeed, our cases recognize that school boards, not lower-level administrators, are generally

the final policymakers in public school districts because administrators are usually constrained by board-established policies. *See, e.g.*, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1190 (10th Cir. 2010). Given all this, we see no way a reasonable jury might conclude that either the school district or school board in this case is liable under *Monell* for Dr. Greer's decisions to suspend Ms. Lawrence, even assuming those suspensions qualified as materially adverse. The district court was right to grant the defendants summary judgment on these retaliation claims, too.

*

That leaves Ms. Lawrence's claim that retaliation was behind the ultimate decision to terminate her employment. And here at least there *was* clearly adverse action caused by the school district and board, the defendants she has chosen to sue: the school board voted to fire her, and everyone before us agrees the board is the final decisionmaker for the school district. But a different sort of causal problem lurks here. Ms. Lawrence does not allege that any members of the school board voted against her *because* they wanted to retaliate for her EEOC complaint. Instead, she alleges only that the school board unknowingly carried out a retaliatory scheme hatched by Dr. Greer.

To be sure, when an employer is manipulated by a biased subordinate, the employer itself might be held liable on a "cat's paw" theory of discrimination — so named in reference to a cat who, as fable tells it, injured his own paw while

innocently doing another creature's sinister bidding. On a cat's paw theory of liability the influence of the biased subordinate provides the causal connection the plaintiff's prima facie case requires, for even though the ultimate decisionmakers weren't biased it was still because of bias that the employee suffered the adverse action. To bring a successful cat's paw or subordinate bias claim in this case, however, Ms. Lawrence bears the burden of showing both that retaliatory animus motivated Dr. Greer to seek Ms. Lawrence's termination and that his biased actions were the proximate cause of the school board's vote to terminate her. *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011); *E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 487 (10th Cir. 2006). And once more she has to show that holding the school district and board liable under this cat's paw theory doesn't run afoul of *Monell*'s teaching on municipal liability.

All that Ms. Lawrence has failed to do. Indeed, even if we assume Ms. Lawrence's cat's paw claim comports with *Monell*, and even if we assume Dr. Greer truly held her EEOC complaint against her — two premises themselves open to question and only lightly discussed in the briefing before us — the record in this case simply doesn't permit the conclusion that Dr. Greer's alleged bias proximately caused her termination. Between Dr. Greer's recommendation of Ms. Lawrence's dismissal and the school board's vote the parties held an extensive seven-day hearing on Ms. Lawrence's work performance before an independent and mutually chosen arbitrator. Ms. Lawrence participated and was represented

by legal counsel. In total, the arbitrator considered testimony from more than fifteen witnesses, many of whom detailed specific occasions on which Ms. Lawrence had failed to perform her job satisfactorily. By way of example, for three different students at two separate schools Ms. Lawrence reportedly devoted inadequate effort to completing suicide risk assessments. At another school, Ms. Lawrence was said to have done likewise after a student said "he was going to bring a gun to school and shoot everyone." Aplt. App. vol. 1, at 169. In the end, the arbitrator concluded that Ms. Lawrence had been sufficiently neglectful of her responsibilities and sufficiently insubordinate to warrant dismissal.

Under this court's precedents, the arbitration process was enough to break any chain of causation that otherwise might have connected Dr. Greer's bias and the school board's vote. To be sure, an independent investigation and exercise of judgment by an unbiased party don't automatically break the chain of causation. *See Staub*, 131 S. Ct. at 1193. That's because the purportedly independent judgment may still rely on "facts provided by the biased supervisor." *Id.* But as this court has explained, no such danger exists when the employer or an unbiased third party "independently verifies the facts and does not rely on the biased source." *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1294 (10th Cir. 2013). In this case, Ms. Lawrence has pointed us to nothing that indicates the arbitrator's factual findings relied on Dr. Greer's input in any way, nor indeed have we found any such indications in our own review of the record.

Ms. Lawrence replies that Dr. Greer at least had a hand in setting the agenda for the arbitration hearing. After all, it was his recommendation of Ms. Lawrence's dismissal that gave rise to the hearing. What's more, the hearing's scope was limited to deciding whether the school district had just cause for firing Ms. Lawrence as Dr. Greer had recommended. It isn't as though the arbitrator came up with the idea that Ms. Lawrence deserved termination on his own. Neither did the school board, for that matter: it relied on the arbitrator's report. If what happened here was enough to break the causal chain, what prevents any grudge-holding supervisor from setting into motion ostensibly independent fact-finding, knowing full well that a bit of digging on anyone is sure to turn up *some* workplace failing and quite possibly enough to prompt termination?

Whatever worries might arise along these lines in other cases, they aren't well placed in this one. The arbitrator put the burden of proof on the school district throughout the hearing and was quite cautious about relying on isolated performance complaints. Even so, he found many credible allegations against Ms. Lawrence coming from many different individuals at many different schools: of the ten schools at which Ms. Lawrence had worked during her time in the school district, seven had expressed dissatisfaction with her work, often "passionately." Aplt. App. vol. 1, at 170. In the end the arbitrator reasoned that "[w]hile it is possible some of these numerous complaints are the result or fault of the complainant and not Ms. Lawrence, there is scant evidence of this being the

case.  The overwhelming evidence is that Ms. Lawrence is the precipitator of the complaints." *Id.*  The arbitrator further identified several distinct reasons why Ms. Lawrence's termination was warranted, each of which he thought was enough all on its own.  Given this record and the law governing us, we simply see no way to conclude that a reasonable jury could find Dr. Greer's bias was the proximate cause of the school board's decision to terminate Ms. Lawrence's employment.

Affirmed.


ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge