No. 53,367

Nelson Hobart, *Appellant,* v. Board of Education of Unified School District # 309; Randy Ball; Myron G. Hermes; Cliff Lambert; Rae Luginsland; Farrell Saxton; Earle Smith; and Harold Stauffer, each individually and as members of the Board of Education of Unified School District # 309; and William E. White, individually and as Superintendent of Unified School District # 309; and Glenis L. Heldenbrand, Reno County Clerk/Election Officer, *Appellees.*

(634 P.2d 1088)

Opinion filed October 23, 1981.

*H. Newlin Reynolds,* of Hodge, Reynolds, Smith, Peirce & Forker, of Hutchinson, argued the cause and was on the brief for the appellant.

*Michael E. Chalfant,* of Branine, Chalfant & Hyter, of Hutchinson, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This action was brought in the court below to enjoin the Board of Unified School District No. 309, Reno County, from holding an election. The election had been called to

determine whether the Board should have the authority to reduce the grade usage at an attendance facility from six elementary grades to just two elementary grades. The term "attendance facility" is defined in K.S.A. 72-8213 to mean a school building which has been the property of a school district disorganized and made a part of a unified district.

The parties stipulated to the following facts at the trial level:

"1. That Unified School District #309 was organized under the Kansas School Unification Act on or before July 1, 1965.

"2. That prior to the unification, Mitchell Grade School was operated by Grade School District #2C.

"3. That Grade School District #2C was disorganized after Unified School District #309 was organized, and the entire territory of former Grade School District #2C was incorporated in and became a part of Unified School District #309, all pursuant to Kansas School Unification Act, Chapter 393, of the Session Laws of Kansas, 1963, as amended and supplemented by House Bill #539 of the 1965 session of the legislature.

"4. That after such unification of Mitchell Grade School into Unified School District #309, it was thereafter known as Disorganized School District #2C. Said Disorganized School District #2C continued to be operated as a grade school. That during the school year of 1980-1981, Mitchell Grade School had grades of kindergarten and one, two, three, four and five. That grade six attended North Reno School located in Unified School District #309.

"5. On May 11, 1981, the Board of Education of Unified School District #309 consisted of the following board members:

"Randy Ball, Myron Hermes, Cliff Lambert, Rae Luginsland, Farrell Saxton, Earle Smith, and Harold Stauffer.

"6. That on May 11, 1981, at an official Board of Education meeting of Unified School District #309, all of said board members unanimously voted in favor of the following resolution:

"BE IT RESOLVED by the Board of Education of United School District #309, Reno County, State of Kansas, that the Reno County election officer is authorized to conduct an election of the resident electors of Disorganized School District 2C who reside in Unified School District #309, on the 16th day of June, 1981, from 7:00 A.M. to 7:00 P.M., for the purpose of voting to determine if the Board of Education of Unified School District #309 shall be granted the authority to change the use of the attendance facility (school building) of Disorganized School District #2C, commonly known as Mitchell Grade School, Reno County, State of Kansas, to permit its use by less than six (6) elementary school grades in compliance with the provisions of K.S.A. 72-8213.

"7. That pursuant to said resolution, the Reno County election officer, who is Glenis L. Heldenbrand, is making preparations to conduct an election of the resident electors of Disorganized School District #2C who reside in School District #309 on June 16, 1981, from 7:00 A.M. to 7:00 P.M., for the purpose of voting on the above resolution.

"8. That according to the official minutes of the meeting of the Board of Education of Unified School District #309 held on May 11, 1981, it was proposed

that if the class reorganization election passes, there will be three classes of Grade One and two classes of grade Two offered at Mitchell School.

"9.   That Nelson Hobart, plaintiff herein, is a resident elector of Disorganized School District #2C."

The trial court considered this stipulation of facts, together with the briefs of counsel, and denied the request for an injunction. It held that an election in such case was not only permissible but mandatory under the provisions of K.S.A. 72-8213, which statute relates to the closing and changing of the grade usage of schools. Plaintiff's appeal was filed in the Court of Appeals and then transferred to this court for decision.

The issue presented is whether the School Board of the unified district under the stipulated facts of this case has the authority to call an election to change and reduce the grade usage at the attendance facility known as Mitchell Grade School. The Board proposes to reduce the grade usage at the facility from six elementary grades to two elementary grades. The answer to this question depends upon a construction of K.S.A. 72-8213 which in pertinent part provides:

"(a)   The board shall not close any attendance facility that was being operated at the time the unified district was organized if at least three-fourths (¾) of the territory and at least three-fourths (¾) of the taxable tangible valuation of the district which formerly owned such building is included in such unified district unless and until a majority of the resident electors within the attendance center of such attendance facility shall give their consent thereto. Such consent may be given in writing in the form of a petition, or the board may submit the question to a vote of such resident electors in the attendance center at an election which shall be conducted in the same manner as for approval of bonds of the unified district. If a majority of those voting on the question vote in favor thereof, the same shall constitute consent for the purpose of this section. *The board may close any attendance facility at any time except as is otherwise provided in this act.* For the purpose of this section the following terms shall have the following meanings: The term 'attendance facility' means a school building which has been property of [a] school district disorganized pursuant to this act, but which, at the time under consideration, is owned by the unified district. The term 'attendance center' means the area around an attendance facility consisting of the territory in such unified district of the disorganized district which formerly owned such attendance facility.

"Notwithstanding the other provisions of this act, the board of education of any unified school district *may close any attendance facility which has failed to receive accreditation* by the state superintendent of public instruction until that office is abolished or the state board of education thereafter, and in any such case no petition, election or other procedures shall be necessary as a condition to such closing.

"(*b*) *The board of any city unified school* district which such city has a population in excess of 20,000 *may close any of its attendance facilities* at any time such board finds the same should be closed to improve the school system of such school district. The limitations of subsection (*a*) of this section shall not apply to any closing under this subsection (*b*).

"(*c*) [Not pertinent.]

"(*d*) In the event any *territory has been or is hereafter attached or transferred* to any unified school district by attachment or transfer proceedings other than a signed agreement under K.S.A. 72-7108 or upon petition therefor of such a unified school district under said statute, *any attendance facility* in the territory *so attached or transferred may be closed by the board and no limitations of subsection (a) shall apply* to any such closing.

"(*e*) *Nothing in this section shall be deemed to restrict or limit the authority of any board to change the use of any attendance facility, so long* as at least three (3) high-school grades, three (3) junior high-school grades, or six (6) elementary school grades are offered in such attendance facility.

"(*f*) [Not pertinent.]" Emphasis supplied.

Subsections (*g*) and (*h*) of this statute need not be quoted. They relate to attendance facilities ordered unsafe by the State Fire Marshal. After such an order is issued the board may close the attendance facility if the board finds that the cost of the restoration, repair or remodeling necessary to meet the requirements of the fire marshal is unwarranted or excessive. On such a finding the facility may be closed without consent or a vote of the resident electors of the area around the facility. Provision, however, is made in subsections (*g*) and (*h*) for an appeal from the fire marshal's order. If the order is affirmed on appeal any twenty-five electors of the district may then petition and require the board to call an election to issue bonds to finance the necessary repairs or modifications.

This statute indicates an intent to retain some further vestige of local control in the resident electors of the districts disorganized and merged with unified districts.

It is argued by plaintiff-appellant that the Board has no express or implied authority under K.S.A. 72-8213 to call an election for the purpose of reducing the number of grades to two. It is further argued that subsection (*e*) of K.S.A. 72-8213 establishes the number of grades necessary to be offered to keep open any attendance facility, and that a school board has no legal authority to reduce the number of grades being offered below those specified.

On the other hand the Board contends that boards of education are endowed with general authority to organize and maintain

schools, and this necessarily includes the authority to control and change the grade usage at attendance facilities. The Board further contends K.S.A. 72-8213(e) merely sets minimum grade usage requirements for facilities of disorganized districts that were being operated at the time the unified district was organized. The Board says if it desires to reduce the grade usage below the grade usage specified in subsection (e), a vote of the electors resident in the area of the disorganized district is then required.

To construe the statute and resolve the issue it may be helpful to review some of the history leading up to the present statute.

Prior to the Unified School District Act of 1963 (L. 1963, ch. 393), Kansas had a hodge-podge of school districts charged with educating the elementary and high school students of the state. The territory of the state was divided into separate grade or common school districts, high school districts, and districts which maintained both a high school and a grade school. Surprising as it may seem, certain territory in the state was not in any school district and paid no school taxes.

A 1961 Unified School District Act was held unconstitutional by this court. *School District, Joint No. 71 v. Throckmorton,* 189 Kan. 259, 368 P.2d 367; 189 Kan. 590, 370 P.2d 89 (1962). A subsequent act was enacted in 1963 and furnished the authority for consolidating and unifying the school districts in the state. The purpose of the act as stated was:

"[T]o establish a thorough and uniform system of free public schools throughout the state whereby all areas of the state are included in school districts which maintain grades one (1) through twelve (12), and kindergarten where desired." L. 1963, ch. 393, § 1.

To accomplish this purpose common school districts maintaining only a grade school were combined in some cases with rural school districts maintaining both a high school and a grade school. In such cases, although only one unified school district emerged, the patrons of the two disorganized districts usually insisted on continuing the same grade usage in their own separate school buildings. The legislators listened to the electors of the local districts and they provided in the unified school district act "[t]he board shall not close any attendance facility that was being operated at the time the unified district was organized." L. 1963, ch. 393, § 23. An escape hatch was provided, however, and in order to close any such attendance facility the board of the

unified district was authorized to do so if it obtained the consent of a majority of the resident electors in the area. The area referred to was that which formerly was a part of the disorganized district. This consent could be either by petition in writing or by an election. The amount of grade usage necessary in any school building to constitute the maintenance of an attendance facility was not designated in the original 1963 act.

In *Hand v. Board of Education,* 198 Kan. 460, Syl. ¶ 2, 426 P.2d 124 (1967), it was held an attendance facility, as that term was used in the law, was closed if the board discontinued any high school, junior high school, or any elementary grade school which had previously been operated by the disorganized school district. If the board desired to close down any school previously maintained at an attendance facility, consent or an election was required.

*Hand* was handed down on April 8, 1967, and on July 1, 1967, the L. 1967, ch. 399, § 1 became effective and a subsection (*e*) had been added. Subsection (*e*) provided:

"(*e*) Nothing in this section shall be deemed to restrict or limit the authority of any board to change the use of any attendance facility, so long as at least three (3) high school grades, three (3) junior high school grades, or six (6) elementary school grades are offered in such attendance facility."

Thereafter this court decided *Hensley v. Board of Education of Unified School District,* 210 Kan. 858, 504 P.2d 184 (1972). In *Hensley* this court construed subsection (*e*) and decided that a change in grade usage at the school attendance facility at Ford, Kansas from eight primary and four secondary grades to grades seven, eight, and nine was authorized by the provisions of the statute which is now K.S.A. 72-8213(*e*). Classes for grades one through six and grades ten, eleven, and twelve had been discontinued. The court held no consent or affirmative vote was required if classes for either of the three categories of grades specified in the statute were maintained. Grades seven, eight, and nine were the "three (3) junior high school grades" referred to in subsection (*e*) of the statute.

In *Welch v. Board of Education,* 212 Kan. 697, 512 P.2d 358 (1973), this court again examined the provisions of K.S.A. 72-8213. There a rural high school district and a common school district had united to construct a school building which had been jointly used by the two districts. The rural high school district

had maintained a high school, grades nine through twelve, and the common school district had maintained an elementary school, grades one through eight. A unified district was formed under the act and the territory of these disorganized districts was merged in the new unified district. The unified board desired to discontinue grades nine through twelve in the building which had previously been used by both school districts. It was held the one building had served as two separate attendance facilities and neither could be closed without consent or an affirmative vote.

The last time this court considered this closing statute was in *Meinhardt v. Board of Education,* 216 Kan. 57, 531 P.2d 438 (1975). In *Meinhardt* we held that a board of education may change the use of an attendance facility of a disorganized district without the consent of the electors so long as the proposed grade usage consists of at least three high school grades, three junior high school grades, or six elementary school grades. It was further held under K.S.A. 72-8213 (*e*) kindergarten may be considered as one of the six elementary grades necessary to fulfill the requirements of grade usage without obtaining the consent of the electors.

K.S.A. 72-8213(*a*) begins with a prohibition against closing any attendance facility that was being operated at the time the unified district was organized provided three fourths (¾) of the territory of the disorganized district became a part of the unified district. Later on in this subsection the board is granted the general authority to close all attendance facilities other than those of such disorganized districts. In addition to this latter authority, specific authority is given in later subsections of the statute to close certain other attendance facilities without consent and without an election. These include any attendance facility which has failed to receive accreditation, attendance facilities in any city which has a population in excess of 20,000, attendance facilities in territory attached or transferred to ay unified district after July 1, 1967, newly constructed attendance facilities which were built to meet the needs of a unified school district, and finally, those attendance facilities ordered closed by the State Fire Marshal.

We find no statutory provision in the school laws other than subsection (*e*) of K.S.A. 72-8213, which sets a minimum grade usage in any attendance facility. We note that K.S.A. 72-8212 directs that every unified district shall maintain, offer and teach

grades one (1) through twelve (12), with kindergarten being optional. This statute also requires that thirty (30) units of instruction be offered in grades nine (9) through twelve (12). This section gives the board broad general authority to divide the territory of the district into subdistricts for purposes of attendance by pupils. The board may govern the use of all school buildings in the district or may open any building for community purposes. The board may make "all necessary rules and regulations for the government and conduct of such schools, consistent with the laws of the state."

Since the legislature apparently has not set requirements in the statutes for a minimum number of grades to be offered in a facility, other than those attendance facilities of the special disorganized districts, we must look to the regulations adopted by the Kansas Department of Education. This department is given the authority to adopt standards or regulations for the accreditation of schools, including both elementary and secondary schools. K.S.A. 72-7513(a)(3). The department oversees the supervision of the public schools. K.S.A. 72-7513(b). The department is specifically authorized to adopt rules and regulations for these purposes. K.S.A. 72-7514.

In exercising this power of supervision the Department of Education has adopted some regulations. We can find no provision in these regulations setting a minimum number of grades to be maintained in an attendance facility. The department regulations do, however, include standards and procedures for accrediting schools, but again, none of these regulations establish a minimum number of grades required to be offered at any attendance facility. K.A.R. 1981 Supp. 91-30-14a on accreditation provides:

"(a) *Administration.* Elementary schools shall conform to the provisions of K.S.A. 72-1107, regarding age of entrance.

"(b) *Organization.* (1) An accredited elementary school shall be organized to include any combination of grades kindergarten through nine (9).

"(2) The middle school concept of organization shall be recognized as a consecutive combination of any grades five (5) through nine (9).

"(3) Kindergarten classes shall be organized separately from other grades and shall be organized on a basis of not less than two and one-half (2 ½) clock hours each day when in session.

"(4) Any organization or reorganization of a school shall be done in compliance with the provisions of K.S.A. 72-8213 or K.S.A. 72-8213a."

As we understand subsection (b)(1) of this regulation, any combination of grade usage, kindergarten through nine, may receive approval by the State Department of Education. When a person considers this regulation along with K.S.A. 72-8213(*e*) which restricts the authority of the board to reduce grade usage in attendance facilities of disorganized districts, it seems clear the statutory limitation in K.S.A. 72-8213(*e*) merely draws the line where consent or an election is required if a unified board wishes to close schools or reduce grade usage below required levels at an attendance facility of a disorganized district.

Generally, it would appear the State Board of Education in its accreditation process is in a better position to determine and enforce minimum grade usages in attendance facilities than the legislature. Subsection (*e*) does not appear to be intended by the legislature to set an inflexible minimum grade usage in the schools of the state.

Under K.S.A. 72-8213(*e*) no consent or affirmative vote of electors is required to reduce grade usage so long as the board offers at least three (3) high school grades, or three (3) junior high school grades, or six (6) elementary school grades in the attendance facilities of the disorganized and merged districts. However, before a board may close such an attendance facility and before a board may reduce the grade usage to less than the number of grades specified in subsection (*e*) it must have the affirmative vote or consent of a majority of the resident electors in the territory located in the disorganized district.

Plaintiff-appellant argues that a board of education has neither express nor implied authority to conduct such an election in the present case. In support thereof he cites specific statutes which have granted authority to the boards to call elections to issue bonds, to disorganize districts, and to approve a change in method of voting on board members. No implied authority was found in those statutes. Appellant relies on *State, ex rel., v. Rural High School District No. 7,* 171 Kan. 437, Syl. ¶ 1, 233 P.2d 727 (1951), for the following rule:

"School districts and other subdivisions of the state have only such powers as are conferred upon them by statute, specifically or by clear implication, and any reasonable doubt as to the existence of such power should be resolved against its existence."

We agree with the rule of law cited but come to a different conclusion as to application of the rule in this case.

There can be little doubt that the legislature has restricted the authority of boards of education to close attendance facilities and to reduce grade usage of the particular attendance facilities described in K.S.A. 72-8213(*a*), *i.e.,* those previously serving a disorganized district which had three-fourths (¾) of its territory included in the unified district. The legislature did, however, specifically authorize the unified school district board to call an election and submit the question of closing such an attendance facility to a vote of the resident electors.

Also under subsection (*e*) of this statute, no election is required to reduce grade usage to the minimum levels specified. We note a board is granted broad authority in K.S.A. 72-8212 to divide the district in subdistricts for the purpose of directing the attendance of pupils, and the board is given title to, and the care and keeping of all school buildings. After considering the entire statutory framework, we hold that when the legislature authorizes a school board to hold an election under K.S.A. 72-8213 and on an affirmative vote of a majority of electors reduce the grade usage at an attendance facility to zero, thus closing the facility, there appears a clear implication of authority to call an election to obtain from the electors consent to reduce grade usage to be offered at the facility to less than six elementary grades without closing the facility completely.

The election proposed by the Board of Education was not only proper but was required under the provisions of K.S.A. 72-8213.

Judgment affirmed.