John L. Vratil, Legal Counsel Unified School District No. 229 Suite 150, Building 40 9401 Indian Creek Parkway Overland Park, Kansas 66210
Stephen T. Adams, Legal Counsel Blue Valley Recreation Commission Suite 1200 9401 Indian Creek Parkway Overland Park, Kansas 66210
Dear Mr. Vratil and Mr. Adams:
We have been asked by Mr. Adams to reconsider the conclusions expressed in Attorney General Opinion No. 2001-1, issued to Mr. Vratil on January 11, 2001. Specifically, we have been asked to reconsider whether the Blue Valley Recreation Commission may use monies in its general fund to purchase real property. We are also asked to clarify whether any recreation commission may use monies in its general fund for the purpose of paying the costs of repairs and upkeep on real property owned by the recreation commission.
In Attorney General Opinion No. 2001-1, it was determined that the Blue Valley Recreation Commission (Blue Valley) "may not establish or use a fund other than its capital improvement fund for the purchase of real property or payment for capital improvement projects listed in K.S.A. [2000] Supp. 12-1935." Only the monies raised through the one-mill levy authorized pursuant to K.S.A. 2000 Supp. 12-1935 and deposited in Blue Valley's capital improvement fund could be used for such purposes. It is our understanding that a question seeking authorization to assess the one-mill levy was submitted to the electors of Blue Valley. A majority of those electors voting on the question voted against granting such authority. Therefore, given our interpretation of the statutes, Blue Valley is effectively precluded at present from exercising the authority to purchase real property granted under subsection (k) of K.S.A. 2000 Supp. 12-1928.
It should be noted that the conclusions expressed in Attorney General Opinion No. 2001-1 were based on a reading of K.S.A. 2000 Supp. 12-1928
and 12-1935 together. The provisions of K.S.A. 2000 Supp. 12-1935 were viewed as a limitation on the authority granted Blue Valley under subsection (k) of K.S.A. 2000 Supp. 12-1928. Because K.S.A. 2000 Supp.12-1935 is applicable only to Blue Valley, the conclusions expressed in Attorney General Opinion No. 2001-1 were not intended to apply to other recreation commissions in Kansas.
In his request for reconsideration, Mr. Adams advocates that the authority provided in K.S.A. 2000 Supp. 12-1928 is independent of the authority conferred under K.S.A. 2000 Supp. 12-1935. Mr. Adams views the authority to purchase real property under K.S.A. 2000 Supp. 12-1928 as enabling legislation while K.S.A. 2000 Supp. 12-1935 provides an independent financing mechanism.
 "K.S.A. [2000 Supp.] 12-1935, contrary to the enabling powers created in K.S.A. [2000 Supp.] 12-1928, was a statute that dealt with financing. It was specifically limited to BVRC. This provision did not grant the BVRC power to purchase real estate, as that power was already created by K.S.A. [2000 Supp.] 12-1928(k). Under K.S.A. [2000 Supp.] 12-1935, Blue Valley was authorized to petition for the levy of an additional
[emphasis in original] tax over and above the four-mill maximum limitation on recreation commissions that existed in 1994. That one mill additional tax required the vote of the people. The provision further imposed restrictions on the purposes for which the one-mill levy could be utilized. The one mill was limited to the purpose of the acquisition of sites, and the contracting, equipping, repairing, remodeling and furnishing of buildings for recreation system purposes. K.S.A. [2000 Supp.] 12-1935 granted an additional power (to create a method of obtaining additional tax monies beyond four mills), it was not a limitation on the power to purchase real estate granted pursuant to K.S.A. [2000 Supp.] 12-1928(k). As [former Representative Nancy] Brown stated in our meeting, the power to levy an additional one-mill was extremely important to the BVRC because the four-mill limitation which was in place was proving to be potentially restrictive."[1]
We agree that K.S.A. 2000 Supp. 12-1935 authorizes Blue Valley to assess a one-mill levy to provide monies for its capital improvement fund. The one-mill levy is in addition to the maximum four-mill levy that may be assessed for a recreation commission's general fund.[2]
However, we respectfully disagree with the analysis regarding the authority of Blue Valley to use monies in its general fund for the purpose of purchasing real property.
In 1994, the Legislature enacted amendments to some of the statutes in K.S.A. 12-1922 et seq. granting the Blue Valley Recreation Commission authority not conferred upon the other recreation commissions in the State. The amendments provided in part:
 "Every recreation commission appointed pursuant to this act shall have the power to:
. . . .
 "(k) acquire title to personal property by purchase, bequest, gift or other donation and acquire title to real property by devise, gift or other donation. No real property may be purchased by the recreation commission appointed by the Blue Valley unified school district No. 229 without first obtaining the approval of the board of education of such school district. Whenever property owned by a recreation commission is sold, the proceeds shall be used for recreation purposes. . . ."[3]
In addition, the 1994 amendments authorized Blue Valley to:
 "[P]etition the board of education of [Unified School District No. 229] to adopt a resolution proposing to make an annual levy not to exceed one mill upon all taxable tangible property within the taxing district for the purpose of creating a capital improvement fund to be used for the acquisition of sites, and for the constructing, equipping, repairing, remodeling and furnishing of buildings for recreation system purposes and to pay a portion of the principal and interest on bonds issued under the authority of K.S.A. 12-1774, and amendments thereto, by cities located in the taxing district. Upon receipt of such petition, the board shall adopt a resolution imposing such levy."[4]
 "The fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs where that intent can be ascertained."[5] "Where the language used is clear and the meaning is subject to but one interpretation, an appellate court applies the expressed intent of the legislature."[6] "A statute[, however,] is ambiguous when two or more interpretations can fairly be made."[7] In order to ascertain the legislative intent under such circumstances, the court is not permitted to consider only a certain isolated part or parts of an act, but is required to consider and construe together all parts thereof in pari materia.[8] "Where the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested."[9]
Despite being "stated in a rather back-handed and ambiguous way,"[10]
the 1994 amendment to K.S.A. 2000 Supp. 12-1928 conferred upon Blue Valley the authority to purchase real property. To interpret the statute in any other manner would have resulted in the adoption by the Legislature of meaningless and useless legislation, a result that violates the presumption to the contrary.[11] The provisions of K.S.A. 2000 Supp. 12-1935, however, cannot be ignored when determining the extent of the authority conferred upon Blue Valley. We believe it is reasonable to interpret the authority to purchase real property conferred under subsection (k) of K.S.A. 2000 Supp. 12-1928 as an independent authority, with K.S.A. 2000 Supp. 12-1935 merely providing a mechanism through which financing for the purchases may be obtained. However, it likewise is a reasonable interpretation to conversely view K.S.A. 2000 Supp. 12-1935 as a limitation on the purchasing authority conferred upon Blue Valley such that purchases of real property may be made only with monies held in its capital improvement fund. Given the ambiguity of the provisions, it is necessary to look to the historical background of the enactment.
A review of the legislative history behind the enactment of the 1994 amendments does little to clarify which interpretation of K.S.A. 2000 Supp. 12-1935 is appropriate. Testimony before the legislative committees notes the provisions of the bill under consideration were special legislation designed in part to ensure greater accountability of the Blue Valley Recreation Commission, authorize Blue Valley to purchase property, and allow Blue Valley to petition the Board of Education for U.S.D. No. 229 for the purpose of levying, upon voter approval, a one-mill levy that would provide funding for purchases of real property and other capital improvements.[12] The goals of the legislation are generally presented in legislative committee testimony as a checklist, lacking any discussion regarding the interplay between K.S.A. 2000 Supp.12-1928 and 12-1935.[13] The only recorded hint of such discussion is provided in testimony in which a member of the Blue Valley Recreation Commission stated that the legislation "will increase the Commission's accountability to the public, while enabling [the Commission], withapproval of the voters, to provide much needed facilities and programs."[14] Former Representative Nancy Brown has stated to us that the purpose of the legislation was to authorize Blue Valley to purchase real property using monies in its general fund, then provide additional financing for such purchases through monies in Blue Valley's capital improvement fund. These clarifying statements, however, are being made after enactment of the legislation and after questions regarding its proper interpretation have been raised. "[T]he post-enactment statements of individual legislators would not be reliable indicators of the legislative intent, [and] their use should not be among the `legitimate methods' sanctioned by th[e] court" for use in statutory construction.[15] Therefore, while some consideration may be given to the testimony of the Commission member,[16] the post-enactment comments of former Representative Brown are not entitled to the same weight. Regardless, the comment of the Commission member appears to be little more than a generalization of Blue Valley's proposed authority under the 1994 amendments. The statement provides little clarification.
We then look to the long standing principle regarding powers of a subdivision of the State. A recreation commission is a subdivision of the State and, as such, has only such powers as are conferred upon it by statute, specifically or by clear implication, and any reasonable doubt as to the existence of such power should be resolved against its existence.[17] At the time the 1994 amendments were adopted, no recreation commission could use monies in its general fund to purchase real property.[18] Through awkward language, the Legislature conferred upon Blue Valley the authority to purchase real property. By including the provisions regarding the capital improvement fund, the Legislature has clouded whether the purchases may be made from monies in the general fund or must be made only from the capital improvement fund. The provisions do not clearly abrogate the longstanding limitation on a recreation commission's authority to use monies in its general fund for purchasing real property. Given this reasonable doubt, we continue to believe that, while the Legislature has authorized Blue Valley to purchase real property, expenditures for such may be made only from the capital improvement fund, establishment of which is subject to voter approval. The one-mill levy assessed for the capital improvement fund is in addition to the four mills that may be levied pursuant to K.S.A. 2000 Supp. 12-1927.
Blue Valley is authorized to maintain a general fund.[19] Monies in its general fund may be expended to pay the ordinary current expenses of the Recreation Commission, as well as incidental expenses pertaining thereto, subject to statutory mandates and restrictions.[20] Current expenses are the "ordinary, regular, recurring, and continuing expenditures for maintenance of property, the carrying on of a business, an office, municipal government, etc."[21] Through K.S.A. 2000 Supp.12-1935, the Legislature authorized Blue Valley, upon voter approval, to establish a capital improvement fund, the monies of which may "be used for the acquisition of sites, and for the constructing, equipping, repairing, remodeling and furnishing of buildings for recreation system purposes. . . ." It is conceivable that a project falling within one of the categories for which capital improvement funds may be spent is legitimately deemed a current expense of Blue Valley, i.e., "repairing" or "remodeling" real property may be regarded as performing "maintenance of property."[22] We therefore must determine whether Blue Valley may use monies in its general fund to pay costs of projects that may constitute both a current expense and a project for which capital improvement funds may be spent.
In interpreting statutes, it is presumed that the Legislature intends that its enactments be given a reasonable construction, so as to avoid unreasonable results.[23] One view of the effect of the 1994 amendments is that the costs of any projects listed within K.S.A. 2000 Supp. 12-1935
must be paid only from the monies in the capital improvement fund. A concern with this interpretation, however, is that monies in the capital improvement fund are raised through a smaller mill levy. Also, establishment of the fund is subject to voter approval. As previously noted, the electors of Blue Valley have not authorized assessment of the one-mill levy for the capital improvement fund. Therefore, under this interpretation, Blue Valley could no longer pay the costs of "maintenance" projects if such projects were also deemed to be "repairs" or "remodeling." The facilities necessary for fulfilling the purpose for which Blue Valley was established would fall into disrepair. This would be an unreasonable result of the legislative action.
The proper interpretation of the 1994 amendments is that the amendments were not a limitation on previously existing authority, but rather provided an additional source from which Blue Valley could pay the costs of some projects. Therefore, if an expense constitutes a current expense of Blue Valley and falls within one of the categories set forth in K.S.A. 2000 Supp. 12-1935, Blue Valley could pay such expense from either its general fund or capital improvement fund.
In summary, the conclusions expressed in Attorney General Opinion No.2001-1 are based on a reading of K.S.A. 2000 Supp. 12-1928 and 12-1935
together and are not intended to apply to any recreation commission other than Blue Valley. We continue to believe that, while the Legislature has authorized Blue Valley to purchase real property, expenditures for such may be made only from the capital improvement fund, establishment of which is subject to voter approval. The one-mill levy assessed for the capital improvement fund is in addition to the four mills that may be levied pursuant to K.S.A. 2000 Supp. 12-1927. Costs of projects previously payable from monies in Blue Valley's general fund, but which are listed among the types of projects payable from the capital improvement fund, may be paid from monies in either the general fund or the capital improvement fund. Any language in Attorney General Opinion No. 2001-1 indicating a different conclusion is hereby withdrawn.
All parties involved in attempting to determine the proper effect of the 1994 amendments are in agreement that the language used in those provisions is confusing. It is our sincere hope that the Legislature will clarify its intention as it continues to work 2001 House Bill No. 2408.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Correspondence, Stephen T. Adams, March 27, 2001.
[2] K.S.A. 2000 Supp. 12-1927(a).
[3] K.S.A. 2000 Supp. 12-1928 (emphasis denotes language added in L. 1994, Ch. 150, § 3).
[4] K.S.A. 2000 Supp. 12-1935(a). The statute was enacted through L. 1994, Ch. 150, § 4.
[5] Mitchell v. Liberty Mutual Ins. Co., No. 84,835 (Kan. S.Ct. June 8, 2001).
[6] Delaney v. Deere and Co., 268 Kan. 769, 775 (2000).
[7] Petty v. City of El Dorado, No. 84,665 (Kan. S.Ct. March 9, 2001).
[8] McCraw v. Merriam, No. 86,127 (Kan. S.Ct. July 13, 2001), quotingKansas Comm'n on Civil Rights v. Howard, 218 Kan. 248, Syl. ¶ 2 (1975).
[9] Robinett v. Haskell Co., 270 Kan. 95, 100-01 (2000).
[10] Correspondence, Stephen T. Adams, March 27, 2001.
[11] Bonanza, Inc. v. Carlson, 269 Kan. 705, 719 (2000), quoting KPERSv. Reimer Koger Assocs., Inc., 262 Kan. 635, 643-44 (1997); Bugner v.Farm Bureau Mut. Ins. Co., No. 84,197 (Kan. Ct. of Appeals January 26, 2001).
[12] See Minutes, Senate Committee on Local Government, March 14, 1994; Minutes, House Committee on Local Government, February 22, 1994.
[13] Minutes, Attachment 2, Senate Committee on Local Government, March 14, 1994.
[14] Minutes, Attachment 4, Senate Committee on Local Government, March 14, 1994 (emphasis added); Minutes, Attachment 3, House Committee on Local Government, February 22, 1994 (emphasis added).
[15] Davis v. City of Leawood, 257 Kan. 512, 528 (1995).
[16] See Arredondo v. Duckwall Stores, Inc., 227 Kan. 842, 847
(1980) (Judicial Council's comments on the various sections of the Kansas Criminal Code, published before the Code was enacted by the Legislature, are helpful in determining legislative intent).
[17] Attorney General Opinions No. 94-48; 93-140; 93-129; 88-157. Seealso Hobart v. Bd. of Ed. of U.S.D. No. 309, 230 Kan. 375, 383
(1981).
[18] Attorney General Opinion No. 88-157.
[19] K.S.A. 2000 Supp. 12-1927(a).
[20] See Hawkins v. Gregory, 138 Kan. 477 (1933). See also Attorney General Opinions No. 91-70; 85-181.
[21] Attorney General Opinion No. 88-136, quoting Black's Law Dictionary, 345 (5th Ed. 1979).
[22] See Attorney General Opinion No. 88-136 (whether a particular expenditure represents a current expense of a recreation commission is dependent on the specific circumstances surrounding the expenditure).
[23] Employers Reinsurance Corporation v. Kansas Comm'r of Insurance, No. 85,110 (April 20, 2001 Kan. S.Ct.).