The Honorable Jean Kurtis Schodorf State Senator, 25th District State Capitol, Room 241-E Topeka, Kansas 66612
 * * *
Dear Senator Schodorf:
You inquire whether the governing board of a technical college has the implied authority to enter into contracts to borrow money. A governing board does not have such authority.
Technical colleges, like community colleges and school districts, are creatures of statute.[1] As such, its governing body has only that power and authority conferred by the legislature either expressly or by clear implication in order to effectuate express powers.[2] Any reasonable doubt as to the existence of such power is resolved against its existence.[3]
K.S.A. 2009 Supp. 72-4470a(c) authorizes a governing board to conduct a variety of activities relative to the operation of the college but does not expressly authorize *Page 2 
borrowing money. Therefore, the issue is whether the following expressed powers impliedly authorize borrowing money:
 (c)(10) enter into contracts;
 (c)(14) adopt any rules and regulations, not inconsistent with any law or any rules and regulations of the state board of regents, [4]
which are necessary for the administration and operation of the college or for the conduct of business of the governing board;[5]
 (c)(17) take any other action, not inconsistent with any law or any rules and regulations of the state board of regents, which is necessary or incidental to the establishment, operation and maintenance of the college. . . .
The fact that a technical college can enter into contracts does not mean that it can enter into all types of contracts. In Attorney General Opinion No. 85-38, Attorney General Robert T. Stephan considered whether a community college could enter into a contract to provide education services outside the state. Like technical colleges, community colleges are authorized to enter into contracts.[6] General Stephan concluded that the ability to contract did not extend to contracts to provide education services outside the state. His rationale was based upon the fact that community colleges were expressly authorized to contract with out-of-state providers to provide instruction to students of community colleges. General Stephan applied the rule that "an affirmative description of powers granted implies a denial of non-described powers,"[7] and, thus, the express authority to contract with out-of-state providers ruled out any implied authority to contract for education services outside the state.
The governing board of a technical college is expressly authorized to enter into certain types of contracts such as leases, [8]
agreements for technical education, [9] bond covenants, [10] and agreements for capital improvement projects. Conversely, contracts to borrow money are not. *Page 3 
While the board's general authority to contract encompasses a variety of contracts necessary to effectuate the express powers of the board, contracts to borrow money are different than the garden-variety contracts that are incidental to operating a college (e.g. janitorial services, property maintenance, food services etc.) Borrowing money involves consideration of a number of factors involving the amount of the debt, ability to repay, and security for the loan. Thus, whether or not technical colleges should be entrusted with this power is a policy decision best left to the legislature.
Also notable is the fact that when the legislature wants to authorize agencies to borrow money, it does so by express authority in addition to the general authority to execute contracts.[11] If borrowing money was implied in the express authority to contract, there would be no need to provide express authority to borrow. The fact that the legislature authorizes certain agencies to both execute contracts and borrow money is indicative that borrowing money is not implied in the express power to contract.
Finally, governing boards of technical colleges can "take any other action . . . which is necessary or incidental to the establishment, operation and maintenance of the college."[12]
While it is debatable whether borrowing money is or is not "necessary or incidental" to operating a college, to conclude that this phrase includes the ability to borrow money would eviscerate the rule that statutory entities have only those powers expressly provided or clearly implied to effectuate express powers.[13]
The ability to borrow money is a significant power and should not be implied lightly. Because any reasonable doubt as to the existence of an implied power is resolved against its existence, a governing board of a technical college does not have the authority to enter into a contract to borrow money.
Sincerely,
Steve Six Attorney General
Mary Feighny Deputy Attorney General
SS:MF:jm
[1] Attorney General Opinion No. 2003-8 (community college, like a unified school district, is the arm of the state existing only as a creature of the legislature).
[2] Hobart v. Board of Education, U.S.D. 309,230 Kan. 375 (1980). Wiggans v. Housing Authority of KansasCity, 22 Kan.App.2d 367, 369 (1996). See Pork Motel v. KansasDept. of Health Environment,234 Kan. 374 (1983) (administrative agencies' powers are dependent upon statute).
[3] Hobart, 230 Kan. at 383.
[4] There are no regulations promulgated by the Kansas Board of Regents addressing the ability of a technical college to borrow money.
[5] This provision authorizes promulgation of regulations. Regulations do not relate to the internal management of an agency.
[6] K.S.A. 2009 Supp. 71-201(b)(7).
[7] LaSueur v. LaSueur, 197 Kan. 495 (1966).
[8] K.S.A. 2009 Supp. 72-4470a(c)(13).
[9] K.S.A. 2009 Supp. 72-4470a(c)(15).
[10] K.S.A. 2009 Supp. 72-4470a(c)(18).
[11] K.S.A. 19-3552 (public wholesale water supply districts); K.S.A. 2009 Supp. 74-8104 (Kansas Technology Enterprise Corp.); K.S.A. 2009 Supp. 74-8904 (Development Finance Authority); K.S.A. 2009 Supp. 74-99b09 (Bioscience Authority); K.S.A. 2009 Supp. 76-780 (State Board of Regents); K.S.A. 2009 Supp. 76-3308 (University of Kansas Hospital Authority).
[12] K.S.A. 2009 Supp. 74-4470a(c)(17).
[13] Wiggans v. Housing Authority of Kansas City,22 Kan.App.2d 367, 369 (1996). *Page 1