(306 P.3d 327)

No. 107,174

JESUS RODRIGUEZ, by and through His Next Friend and Natural Mother, GRACIELA RODRIGUEZ, *Appellant*, v. UNIFIED SCHOOL DISTRICT 500, *et al.*, *Defendants*, and MUTUAL OF OMAHA INSURANCE COMPANY, *Appellee*.

Opinion filed August 16, 2013.

*Henri J. Watson* and *Kathleen M. Hagen*, of Watson & Dameron, LLP, of Kansas City, Missouri, for appellant.

*Robert J. Hoffman* and *Lauren Horsman*, of Bryan Cave LLP, of Kansas City, Missouri, for appellees.

Before HILL, P.J., PIERRON and SCHROEDER, JJ.

HILL, J.: This is an appeal from a district court's denial of insurance coverage. Under the terms of an excess coverage policy issued to the Kansas State High School Athletic Association, Jesus Rodriquez could receive compensation for his catastrophic injuries if his travel was authorized by the school and the travel was subject to reimbursement by the school. Rodriguez' school authorized his travel to his soccer game in a pickup truck driven by a teammate when it permitted him to ride to the game instead of riding on the school bus provided for that purpose. But his travel was not subject

to reimbursement by the school. Accordingly, we affirm the district court's denial of insurance coverage.

*The facts are undisputed.*

In 2006, Rodriguez was a 10th grade student at Sumner Academy, one of the public high schools in Unified School District No. 500. Rodriguez, a member of the school soccer team, traveled to a school soccer game in a pickup truck driven by a teammate, Michael Hitze. Hitze owned the truck. On the way to the game, the pickup truck was involved in an accident and Rodriguez was severely injured. He made a claim for benefits under an excess catastrophic injury insurance policy issued by Mutual of Omaha Insurance Company to the Kansas State High School Athletic Association.

The excess catastrophic insurance policy provided coverage for students participating in activities under the jurisdiction of the Kansas State High School Athletic Association, including "pre and post game-related activities." Such activities included "covered travel as defined under the policy." The policy defined "Covered travel" as:

"[T]eam or individual travel, for purposes of representing the Participating School, that is to or from the location of a Covered Event and is authorized by the Insured Person's Participating School, *provided the travel is paid for or subject to reimbursement by the Participating School.*" (Emphasis added.)

The insurance company denied Rodriguez' claim for benefits under the policy, reasoning the accident did not occur during "Covered Travel." The company first noted that Rodriguez was not traveling in a vehicle provided by the school but was instead traveling in a vehicle owned by a private individual. The company found no authority for Sumner Academy to reimburse a student for travel expenses incurred while transporting another student to an athletic event in a private vehicle. And, in its view, there was no evidence Hitze had requested reimbursement of his travel expenses or that the school had actually reimbursed him. Therefore, the company concluded Rodriguez' means of travel was not "paid for or subject to reimbursement" as contemplated by the policy.

Rodriguez took his claim to court seeking declaratory judgment. The parties agreed that Rodriquez was a student at Sumner Academy, a participating school under the policy, and the soccer game was a covered event according to the policy. These stipulations focused the dispute on travel. The district court ruled there were two questions to answer: (1) whether the travel at issue was "authorized" and (2) if authorized, whether the travel was "subject to reimbursement." The court answered both questions in the negative.

In answering these questions, the district court cited *Hobart v. U.S.D. No. 309*, 230 Kan. 375, 634 P.2d 1088 (1981), where the Supreme Court held that a school district can only take actions that are authorized by the legislature. In other words, school districts must obey the law. The district court recognized that a written policy of the school in this case authorized travel by bus or private vehicle, but also held that according to K.S.A. 72-8305, a school district may only provide transportation by bus or private vehicle *if there is adult accompaniment*. Putting the two together, the court said that in this case, then, the school would have violated state law had it authorized transportation without an adult riding along. The court also found the Kansas State High School Athletic Association and Mutual of Omaha entered into the insurance contract with an understanding that the school districts had to obey Kansas law. The district court concluded Rodriguez' travel was not authorized under Kansas law, so there was "clearly" "no right of reimbursement" for the travel. The district court ruled in favor of the insurance company.

*Fundamental insurance law offers guidance.*

An insurance agreement is a contract. The interpretation of an insurance contract is a question of law over which this court has unlimited review. *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003). We are not bound by the district court's interpretation of a contract. In general, exceptions, limitations, and exclusions to insurance policies are to be narrowly construed. The insurer assumes the duty to define limitations to coverage in clear and explicit terms. To restrict or limit coverage, the

insurer must use clear and unambiguous language; otherwise, the insurance policy must be construed in favor of the insured. 276 Kan. at 112. If the language in an insurance policy is clear and unambiguous, it must be construed in its plain and ordinary sense and according to the sense and meaning of the terms used. 276 Kan. at 111.

An insurance policy is ambiguous if it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. 276 Kan. at 112. Contract language is not ambiguous simply because the parties disagree on the interpretation of the language. To determine whether the language of a contract is ambiguous, the court must not consider what the insurer intends the language to mean, but must view the language in terms of what a reasonably prudent insured would understand the language to mean. 276 Kan. at 111. If contract language is ambiguous, the contract must be construed against the drafter. Whether a contract is ambiguous is a matter of law subject to de novo review. *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002).

Of course, while considering statutory interpretations, this court exercises unlimited review of such questions. *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 587, 257 P.3d 255 (2011).

*We hold the school district authorized this travel.*

We begin our analysis by stating that we see no ambiguity in this insurance contract. The two terms used in the insurance contract that are at the heart of this dispute are "authorized" and "subject to reimbursement." In our view, a reasonably prudent insured would understand the two controlling terms of the policy. The terms in question are not ambiguous just because the parties here disagree about their meaning. Therefore, following the ruling in *Marshall*, we shall attribute ordinary everyday meanings to the ordinary words used in this clause dealing with covered travel because the context indicates there is no technical sense attributed to the words that would alter their ordinary meaning. We look first at "authorized."

Black's Law Dictionary 153 (9th ed. 2009) defines "authorize" as: "1. To give legal authority; to empower . . . . 2. To formally approve; to sanction." Using that definition, we can see that the school authorized Rodriguez' travel with another student.

The record contains a copy of a "Transportation Release Form" signed by one of Rodriguez' parents. It clearly informs the parents that the school was going to permit Rodriguez to either drive or ride with other team players if a parent gave them permission:

**"Saber Soccer**
**"Sumner Academy**
**"Transportation Release Form**

**"I have read and understand the procedures for the 06-07 Saber Soccer team. I realize that advance notice of schedule changes and special events will be given as soon as possible. I understand that while busses are ordered for all matches, the transportation issue for the school present unusual situations, and give my permission for my son/daughter Jesus Rodriguez to:**

"(Check all that apply)

"___✓___ Drive without passengers from school to practices, home matches, or to meet the bus for away matches.

"___✓___ Drive with passengers from school to practice, home matches or to meet the bus for away matches.

"___✓___ Ride with other players from school to practice, home meets, or to meet the bus for away meets.

"___✓___ Ride with a coach from school to practice, home matches, or to meet the bus for away matches on occasion. (If the coach has room in their car)

"___✓___ Drive to team events without passengers.

"___✓___ Drive to team events with passengers.

"___✓___ Ride to team events with other players.

"___✓___ Ride with another player's parent/guardian to or from practices, matches or event if there is room.

"List any parent/guardian your player may NOT ride with:

"— — — — — — — — — — — — — — —

"— — —Any situation the coaches didn't think of (please describe)."

All of the statements were checked on the form filed with the school. Signing this form and submitting it to the school meant that Rodriguez would not have to ride the school bus to the games.

The two statements at the bottom of the form were left blank with lines drawn through the spaces, indicating the spaces were

intentionally blank. Leaving them blank meant there were no parental restrictions of with whom Rodriguez could ride or drive. One of Rodriguez' parents signed the form and included phone numbers.

Once this completed form was signed and returned, the school allowed Rodriguez to ride with another student to the soccer games. Thomas Petz, the executive director of human resources for the school district, testified that the school permitted student athletes to travel to school sponsored games in cars driven by other participating students. He said that students did not have to ride the bus to events. According to Petz, in order to inform the parents of this practice, the school sent home the forms (shown above). Thus, in our view, the school obtained parental consent to permit the student to travel in this manner when the form was signed by the student's parent(s). In this instance, parents of both boys had signed a form. Furnished with these signed permission slips, the school allowed Rodriguez to get in his teammate's pickup truck and allowed the teammate to drive to the game.

After reading this record, it becomes clear that the school created an informal method of transporting team members to soccer games by permitting teammates to ride with each other instead of riding on the school bus—the "official" mode of transportation. Employing permission slips from parents gave ample notice to all participants that the district would permit this form of travel. We do not speculate why this was done because the record is unclear on that point. What is clear, though, is that the school was not paying for this transportation. None of the slips mentioned reimbursement for such travel.

These words and deeds compel us to conclude that the school permitted this transportation—this trip was not some impromptu act of two young men trying to break the rules as an act of rebellion. This system of informal transportation of students was created and sanctioned by the school. In our view, this was authorized travel as contemplated by the insurance policy.

*We examine the district court's ruling.*

The district court reached a different conclusion based upon one of the school district's written policies and K.S.A. 72-8305, a statute dealing with bus transportation. We look first at the school district's policy.

School Policy 3.5.5.0.0-A, entitled "Pupil Transportation," pertains to "Field Trips, Curricular Activities, Extracurricular Activities." Subsection 3.1 states in part:

> "When district equipment or drivers are unavailable or when it is economically advantageous to use other means of activity transportation, arrangements for hired or non-district-owned activity transportation shall be made by the building administrator."

After that statement comes subsections dealing with various means of transportation: Contracted or Leased School Buses (.3.1.1), Rental or Lease Vehicles (.3.1.2), Chartered Buses (.3.1.3), and Private Vehicle (.3.1.4).

Subsection .3.1.4, entitled "Private Vehicle," states:

> "Use of private automobiles for field trips and activity transportation shall not be authorized except in such instances where drivers are fully responsible adults (over 21 years of age). Authorized drivers shall verify insurance coverage in accordance with established Kansas insurance minimums to the building principal or his designated representative."

The school district's own interpretation of this policy reveals much. Petz testified that this provision, 3.5.5.0.0-A.3.1.4, would apply to the facts of this case if the school arranged private transportation as the "official mode of transportation" to an event. Petz believed the provision would not apply to cases such as this with Rodriguez, where the "official authorized travel" by the school was the bus and Rodriguez simply used another method of transportation with his teammate. Petz suggested that the policy cited above would only have applied here, thus triggering the provision's requirements of a 21-year-old or older driver in a car with a sufficient amount of insurance, if the pickup truck had been the official, authorized means of travel to the soccer game. In other words, if the building administrator had asked Hitze to drive, then Hitze or someone else in the vehicle needed to be at least 21 and

his pickup truck needed to be insured to the level of coverage required by the school. That is a reasonable interpretation. The school policy, when read in its entirety, gives building principals several options to secure transportation of students to field trips and extracurricular (sports) activities.

But the district court ignored Petz' testimony and took a more general view of the school's travel policy and stated that the school district could authorize travel "by the bus or by private vehicle or by a combination of the two." The court failed to acknowledge that the building administrator was required to take action before the .3.1.4 requirements were activated. Indeed, there is no evidence in the record here that any such action was taken by the building administrator.

Actually, the major focus of the district court in its ruling dealt with K.S.A. 72-8305. The statute is entitled: "**Transportation for activities; rules and regulations for school bus operation.**" It provides:

> "The board of education of any school district . . . which . . . is . . . (c) engaged in any extracurricular school activity, *may provide and furnish transportation* for students and school personnel of the school district . . . . The school district . . . may pay mileage for those school buses contracted, leased or hired for such purposes, and may adopt rules and regulations governing the use and operation of such school buses. All students so transported shall be under school control and discipline *and in every case shall be accompanied by a suitable adult person.*" (Emphasis added.)

Obviously, this law permits the districts to make bus transportation arrangements for these off-campus activities but requires school control and discipline for those students so transported, as well as adult accompaniment. By its plain terms, this statute is limited to transportation by buses. There is no mention in this law of the use of privately owned vehicles for the transportation of students to these activities.

But, by using a definition from a different statute, K.S.A. 72-8301(c), the district court stretched the adult accompaniment requirement found in this statute to apply *to all student transportation*. This is too much of a stretch.

In the definitions statute of Article 83, "Transportation of Students," K.S.A. 72-8301(c) states:

"The words 'provide or furnish transportation' in addition to their ordinary meaning shall mean and include the right of a school district to: (1) Purchase, operate and maintain school buses and other motor vehicles; (2) contract, lease or hire school buses and other motor vehicles for the transportation of pupils, students and school personnel; (3) purchase, operate and maintain buses other than school buses for the transportation of pupils, students or school personnel to or from school-related functions or activities; (4) contract, lease or hire buses other than school buses for the transportation of pupils, students and school personnel if the buses are owned and operated by a public common carrier of passengers under a certificate of convenience and necessity granted by the state corporation commission or the interstate commerce commission and are operating within the authority granted to the public common carrier; and (5) *reimburse persons who furnish transportation to pupils, students or school personnel in privately owned motor vehicles*." (Emphasis added.)

Clearly, this legislation is a grant of authority to school districts to use various means to provide for the transportation of students. Unlike K.S.A. 72-8305, there is no mention of the types of school activities associated with this statute, as it is a part of the general definitions used in Article 83. Under this grant of authority, school districts can spend money on school buses for the transportation of students as well as reimburse persons who transport students in privately owned motor vehicles under this law.

Unfortunately, the district judge lumped the two laws together and ruled:

"It is my belief and finding that the statute K.S.A. 72-8305 says to a school district you can provide transportation to these kinds of activities by bus, by private vehicle, but there must be an adult driving that vehicle—or I should say not driving, but I think present in the vehicle—the way the statute reads—accompanied by an adult. . . ."

The court went on to hold:

"It is this court's finding that District 500 would have to violate state law by providing and authorizing transportation of their students to and from sporting activities in a manner driven by someone that is not an adult. . . .

"The policy was clearly entered into with the understanding by all the players, that being the Kansas Athletic Association and Mutual of Omaha, that the activities by the school districts that were members had to conform to those statutes."

We note that the district court made its last finding concerning the parties' understanding of the insurance contract without support of any evidence we can find in the record. The policy speaks for itself, and the intent of the parties should be gleaned from the contract itself.

The major point of this holding is that the district court ruled that every student transported by a school district in Kansas to sporting activities must be accompanied by a suitable adult, no matter whether that transportation is by school bus or by private vehicle.

That is not what K.S.A. 72-8305 requires. We agree that if a school district provides bus transportation to extracurricular activities, then this law requires that a suitable adult must ride along. But the statute is *silent* with respect to transportation in privately owned vehicles. Further, the statute is silent about "authorizing" transportation. This is where the district court's error occurred. It rewrote the statute from "provide and furnish transportation for students" to read "authorize and furnish transportation for students." We see no prohibition in the statute that would prevent the school district here from authorizing alternative means of transportation of students to extracurricular activities.

We therefore reverse the district court's holding on this point. Based on the ordinary meaning of the term "authorized," we hold the school district indeed authorized this travel by Rodriguez by first seeking the permission of his parents and then, once that was obtained, permitting him to ride with a teammate.

But that does not mean that Rodriguez prevails, because we must come to the second requirement of the insurance policy, *i.e.*, the travel was paid for or "subject to reimbursement." We conclude this travel was not reimbursable as the term is used in the insurance policy.

*This travel was not subject to reimbursement as contemplated in the policy.*

Rodriguez maintains his travel was subject to reimbursement by the school district because: (1) Both Petz' and the school district's attorney's testimony suggested Hitze could have made a claim for

reimbursement of his travel expenses; (2) K.S.A. 72-8301 and K.S.A. 12-105b give the school the right to reimburse persons who furnish private transportation to students; (3) the school's principal had the discretion to reimburse Hitze's travel expenses out of the school activity fund; (4) there is no adult accompaniment requirement under Kansas law as it pertains to reimbursement of travel expenses; and (5) Mutual of Omaha is estopped from denying coverage where performance was complete. We have several reasons that persuade us that this trip was not subject to reimbursement.

We begin, once again, with the applicable statute. K.S.A. 72-8301(c) enables a school district to *reimburse* persons in private vehicles who provide transportation for pupils but does not elaborate on how such reimbursement should be made. That procedure must be found in the published policies and procedures of the various school districts.

When we look at the written policy of the district here, we see no grounds for reimbursement. These rules and regulations are how a school district governs its own actions, agents, and employees. The school district policy here clearly states:

"Use of private automobiles for field trips and activity transportation shall not be authorized except in such instances where drivers are fully responsible adults (over 21 years of age). Authorized drivers shall verify insurance coverage in accordance with established Kansas insurance minimums to the building principal or his designated representative."

We note two requirements—21-year-old or older driver and verified/required insurance coverage for the vehicle used for the transportation. There is no evidence of either of those requirements being met here. This means that unless those two requirements are met, the transportation is not subject to reimbursement.

We turn now to the insurance policy. Coverage included:

"[T]eam or individual travel, for purposes of representing the Participating School, that is to or from the location of a Covered Event and is authorized by the Insured Person's Participating School, provided the travel is paid for or subject to reimbursement by the Participating School."

The structure of this sentence leads us to conclude that the clause, "provided the travel is paid for or subject to reimbursement by the

Participating School," modifies the prior clause, "travel . . . authorized by the . . . Participating School." In other words, only travel that is paid for or subject to reimbursement by the school district is covered by this policy. The clause refers to a subset of authorized travel. It is a limitation of coverage to those instances where the school district is financially responsible for the transportation.

There is no evidence in this record that suggests Hitze made a claim for his driving expenses or that the district paid such a claim. Further, we are unmoved by the testimony cited by Rodriguez on this point. Petz testified that if Hitze had submitted a request for reimbursement, it would have been "processed" through the building activity fund for consideration. The school district's attorney, Gregory P. Goheen, testified that in his opinion, the school could "receive" a claim for the type of travel.

In our view, this testimony simply indicates Hitze could have made a *claim* for reimbursement. The testimony does not support a finding that Hitze's expenses *could have actually been reimbursed*. To satisfy the terms of the insurance policy, the expenses must be costs the school, in fact, could have reimbursed. Petz' and Goheen's testimony merely suggests any person can make a claim for reimbursement. The question here is whether the claim could actually be paid. Because Hitze's expenses could not have been paid in compliance with school policy, as no person over 21 years old was present and proof of required insurance coverage was not submitted, any such expense claim was not subject to reimbursement.

Rodriguez mistakenly relies on K.S.A. 12-105b(h) to support the argument that Hitze's travel was subject to reimbursement. That statute provides that claims against a school for the purchase of gasoline while students are participating in an extracurricular activity outside the school boundaries "may be paid in advance of approval thereof by the governing body." The statute states: "The governing body may designate and authorize one or more of its officers or employees to pay any such claim made against the school district in advance of its presentation to and approval by the governing body." K.S.A. 12-105b(h).

We do not see how this statute applies to the facts of this case. It is undisputed that Hitze did not ask for approval of his transportation in advance of the soccer game. Under K.S.A. 12-105b(h), a student could indeed try to obtain advance permission to transport students to an activity and request reimbursement for gasoline, but that transportation would still require adult accompaniment in order to comply with the school district policy.

Similarly, Rodriguez' reliance on the principal's discretion to pay expenses out of the school activity fund is unpersuasive. Indeed, K.S.A. 72-8208a permits the school district to establish a school activity fund from which athletic expenses may be paid. But this statute makes no reference to student travel. Kansas courts have repeatedly held that a specific statute controls over a general statute. *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1215, 221 P.3d 580 (2009). Thus, K.S.A. 72-8301(c) and K.S.A. 72-8305, laws that deal with student transportation, govern this issue. Moreover, as with K.S.A. 12-105b(h), it is theoretically possible that a principal could reimburse travel expenses from the school activity fund, but the travel at issue would still need to involve adult accompaniment and sufficient insurance coverage in order for travel expenses to be reimbursable in compliance with school policy.

For his final argument, Rodriguez contends that Mutual of Omaha is estopped from denying coverage because "performance" under the insurance contract was complete—*i.e.*, the policy had been purchased and paid for and Mutual of Omaha had accepted the premiums. He then contends that the insurer cannot now, after an insured has been injured during travel, escape liability by arguing the travel was illegal.

This argument totally ignores the fact that an insurance policy can limit liability by eliminating certain risks, as long as the insurer assumes the duty to define limitations to coverage in clear and explicit terms. See *Marshall*, 276 Kan. at 112. When the Kansas State High School Athletic Association purchased its catastrophic injury insurance policy for its members, it only bargained for coverage of "covered travel" as defined by the policy. Rodriguez' travel

was not "covered travel" because it was not subject to reimbursement.

We reverse the district court's ruling that the school district did not authorize Rodriguez' travel. We affirm the district court's holding that this was not covered travel as contemplated by the excess insurance policy in this case. We hold that the district court did not err when it dismissed Mutual of Omaha as a party.

Affirmed in part and reversed in part.